**Maggie Jo ADAMS, aka Maggie Jo Koza, Petitioner–Appellant,**

v.

**George W. SUMNER, Director, Nevada Department of Prisons; Brian McKay, Attorney General, Respondents–Appellees.**

**No. 93–15621.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1994.

Decided Oct. 28, 1994.

Atmore L. Baggot, Phoenix, AZ, for petitioner-appellant.

Robert E. Weiland, Deputy Atty. Gen., Carson City, NV, for respondents-appellees.

Before: HUG, FARRIS, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Is evidence obtained from continued eavesdropping by a hotel operator who inadvertently intercepts a telephone call admissible under the Federal Wiretapping Statute?

## I

On October 24, 1980, John Schweizer was murdered while driving his taxi in Las Vegas. On November 5, 1980, a clerk at a Las Vegas hotel had been connecting a telephone call to Maggie Jo Adams' hotel room when he inadvertently heard one of the parties mention a gun. He continued to listen and heard a man and woman discuss shooting someone in a car. The clerk notified the police. Upon searching the room occupied by Adams and her husband, they found three guns, including one that a firearms examiner concluded definitely had killed Schweizer. At the scene of the murder, the police also found Adams' handprint in Schweizer's taxi.

The police interrogated Adams upon her arrest but ceased once she asked to speak to an attorney. On the next day, the police brought her into an interrogation room, advised her of her *Miranda* rights, and told her that they had evidence of her participation in the murder. Adams then confessed to three murders, two of which victims were Schweizer and a Thomas Harding. She also told the police that she and her husband had hitchhiked from near the site of Schweizer's murder.

The police used this new information to track down the driver and passengers of the car who had picked up Adams and her husband. These witnesses could not identify Adams as the female hitchhiker, but their general description of the woman matched Adams.

Adams was charged with Schweizer's murder, and the case was assigned to Nevada state court Judge Guy. She was also charged with Harding's murder which was assigned to Nevada state court Judge James Brennan.

On October 15, 1981, Judge Guy denied Adams' motion to suppress the intercepted telephone conversation in the Schweizer trial. On November 10, 1981, Judge Brennan granted an identical motion in the Harding trial and eventually granted Adams' motion to dismiss. Adams then moved again to

suppress the evidence in the Schweizer trial, which Judge Guy denied. The Nevada Supreme Court affirmed.

On November 23, 1983, Adams was found guilty of Schweizer's murder. The Nevada Supreme Court reversed her conviction, holding that her confession had been obtained illegally because she had invoked her right to counsel. On January 30, 1987, Adams was again found guilty of murder after a retrial. At the second trial, the driver and passengers testified that they had given a ride to a woman similar in appearance to Adams. Adams appealed to the Nevada Supreme Court, claiming that the testimony of the driver and passengers should have been excluded as fruit of the poisonous tree because it was a product of her illegally obtained confession. The Nevada Supreme Court held that the admission of the testimony was harmless. 104 Nev. 262, 756 P.2d 1184.

This petition for writ of habeas corpus followed.

## II

■ Adams argues that the contents of the telephone conversation should have been excluded at her trial in state court for violation of 18 U.S.C. §§ 2511(1)(a) and 2515 (sometimes referred to as "Federal Wiretapping Statute"), which prohibit the admission of evidence from a person who "willfully intercepts, endeavors to intercept, or procures any other person to intercept, any wire or oral communication." 18 U.S.C. § 2511(1)(a).[1] Adams maintains that the clerk's eavesdropping was willful.

Since the state court found that the clerk's initial interception was not willful, we must presume that this finding of fact is correct. 28 U.S.C. § 2254(d); *Burden v. Zant*, 498 U.S. 433, 437, 111 S.Ct. 862, 864, 112 L.Ed.2d 962 (1991). Adams argues, however, that even if the first few seconds of eavesdropping were not willful, when the clerk decided to continue listening for several minutes further, he violated section 2511(1)(a). The

state court did not make any findings regarding the clerk's decision to stay on the line.

In *United States v. Savage*, 564 F.2d 728 (5th Cir.1977), the Fifth Circuit examined this problem of continued eavesdropping after an initial inadvertent interception. A hotel switchboard operator, while connecting a phone call, remained on the line to listen to the conversation. The court held that the initial interception was lawful because it fell within the exception of 18 U.S.C. § 2511(2)(a)(i) (providing that interception of call by switchboard operator in normal course of employment is not unlawful), and because it was not willful under 18 U.S.C. § 2511(1)(a). *Id.* at 731–32.

The court then proceeded to discuss the problem of continued eavesdropping. It explained that, "[d]efendant Savage asserts, however, that Mrs. Dye deliberately remained on the line after her initial intercept to listen in on the conversation. But the extent to which she did was due only to her initial inadvertent intercept that caused her to hear the voice of a female occupant who was 'very distraught and upset' and 'almost crying.'" *Id.* at 732. The court concluded that, "[u]nder the circumstances she did what she thought was right.... We find no evidence that Congress ... intended such conduct to be unlawful. This is not the case of an illegal wiretap by the Government or the case of a malicious violation of one person's privacy by another through intentional eavesdropping." *Id.*

Similarly, the evidence in this case was that the hotel clerk remained on the line because he was concerned that illegal activity was occurring in the hotel. He, too, apparently thought that this was the right thing to do, and there is no showing that he intended a willful violation of another's privacy.

This understanding of lawful interceptions under section 2511(1)(a) is in accord with the legislative history of the wiretapping statute, which included a reference to *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933) for the meaning of "willful." *See* Omnibus Crime Control and Safe Streets

---

1. We interpret the language of 18 U.S.C. § 2511(1)(a) as it existed in 1980 at the time of

the interception.

Act of 1968, S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2181. *Murdock* defined "willful" to mean "done with a bad purpose," "without justifiable excuse," or "stubbornly, obstinately, or perversely." 290 U.S. at 394, 54 S.Ct. at 225. The clerk's continued eavesdropping was not done with a bad purpose or without a justifiable excuse. When he heard the callers mention a gun, he was alerted to the possibility of illegal activity occurring in the hotel and was justified in listening to the conversation to determine whether his concern was merited.

The continued eavesdropping after the inadvertent interception was not willful under the Federal Wiretapping Statute. Evidence from the call was admissible.

### III

■ Adams argues that the decision by Judge Brennan on November 10, 1981, to exclude the telephone conversation in the Harding murder case collaterally estopped Judge Guy from ruling on October 15, 1981, that the conversation was admissible in this case. Collateral estoppel is applied prospectively, not retroactively, *United States v. Seley*, 957 F.2d 717, 720–21 (9th Cir.1992). We reject Adams' argument.

### IV

Adams argues that the state and federal district courts erred in concluding that the admission of the witnesses' testimony that they had given a woman a ride from near the site of the murder was harmless error. Because the evidence could not have had a "substantial and injurious effect or influence in determining the jury's verdict," any error in its admission was harmless. *Brecht v. Abrahamson,* — U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).[2]

AFFIRMED.

---

**2.** Because the admission was harmless, we do not need to address Adams' claim that the court should order an evidentiary hearing to determine the voluntariness of her confession.

