DARRYL WRIGHT, PLAINTIFF v. TOWN OF ZEBULON, TOWN OF ZEBULON POLICE DEPARTMENT, ROBERT MATHENY, TOWN MAYOR, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TOWN MAYOR, RICK HARDIN, TOWN MANAGER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TOWN MANAGER, CHIEF TIM HAYWORTH, CHIEF OF POLICE FOR THE TOWN OF ZEBULON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE FOR THE TOWN OF ZEBULON, LIEUTENANT MICHAEL McGLOTHLIN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR THE TOWN OF ZEBULON, SCOTT FINCH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR THE TOWN OF ZEBULON, ROBERT GROSSMAN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR THE TOWN OF ZEBULON, DEFENDANTS

No. COA09-960

(Filed 16 February 2010)

## 1. Governmental Immunity— municipal police department— capacity to be sued

The trial court properly dismissed claims brought by plaintiff, a former police officer with the Town of Zebulon Police Department, against the Town of Zebulon Police Department, because a municipal police department lacks the capacity to be sued. The trial court also properly dismissed official capacity claims asserted against the individual defendants because the claims were duplicative of the claim against the Town of Zebulon, their employer.

## 2. Police Officers— North Carolina Electronic Surveillance Act—willful behavior—public safety

The trial court did not err in granting defendants' motion for summary judgment on plaintiff's claim that defendants violated the North Carolina Electronic Surveillance Act by monitoring plaintiff's conversations in his patrol car. Because the purpose of the monitoring was to ensure public safety, defendants did not act with a bad purpose or without a justifiable excuse. Thus, there was no genuine issue of material fact as to whether defendants acted willfully.

Appeal by plaintiff from order entered 23 March 2009 by Judge Shannon R. Joseph in Wake County Superior Court. Heard in the Court of Appeals 2 December 2009.

*Gray Newell, LLP, by Angela Newell Gray, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Victoria S. Tolbert, for defendants-appellees.*

HUNTER, Robert C., Judge.

Plaintiff Darryl Wright, a former police officer with the Town of Zebulon Police Department, appeals from the trial court's entry of summary judgment in favor of defendants—the Town of Zebulon, Zebulon Mayor Robert Matheny, Zebulon Town Manager Rick Hardin, the Zebulon Police Department, Zebulon Chief of Police Tim Hayworth, and Zebulon Police Officers Michael McGlothlin, Scott Finch, and Robert Grossman. Plaintiff's principal argument on appeal is that the trial court erred in granting summary judgment because triable issues of fact exist regarding plaintiff's claim that defendants violated the North Carolina Electronic Surveillance Act, N.C. Gen. Stat. §§ 15A-286 to -298 (2009) ("NCESA"), by willfully intercepting oral communications made by plaintiff in his patrol car during an integrity check conducted by the police department to determine whether plaintiff was "tipping off" drug dealers about confidential police information. We conclude that summary judgment was proper in this case as the forecast of evidence produced establishes that defendants did not act "willfully" in intercepting plaintiff's oral communications and that plaintiff, under the facts of this case, did not have a reasonable expectation of privacy as to his oral communications made in his patrol car. Accordingly, we affirm.

## Facts

Plaintiff began working as a police officer for the Zebulon Police Department in June 1993 and was promoted to Sergeant in February 2001. Sometime in 2002, Zebulon Police Chief Timothy Hayworth received information from an informant that plaintiff was " 'tipping-off' drug dealers about confidential police department information" and "socializ[ing] with drug dealers." Unsure whether the informant was credible, Chief Hayworth decided not to take any action in 2002. In the late spring or summer of 2005, however, Chief Hayworth received allegations that plaintiff's personal vehicle was seen at a local residence known for drug activity and that plaintiff was seen at a party where illegal drugs were being used. Concerned about the three complaints in three years, Chief Hayworth decided to conduct an investigation into the allegations. Chief Hayworth feared that if plaintiff were, in fact, tipping-off drug dealers about police department information, it might endanger the lives of police officers, informants, and the public.

After discussing the matter with Detective Finch, who was in charge of the department's Investigations Division, Chief Hayworth

decided to conduct an "integrity check." The integrity check involved monitoring plaintiff's conversations in his patrol car while the department was staging the execution of a search warrant. Chief Hayworth also consulted with John Maxfield, legal counsel for the Wake County Sheriff's Office, who gave his opinion that the integrity check, as described by Chief Hayworth, did not appear to violate state or federal law.

On the day of the integrity check, plaintiff and other police officers were told that a search warrant had been issued to search the residence where plaintiff had previously been seen socializing with drug dealers. Only Chief Hayworth, his command staff, and Detective Finch knew that the search warrant was part of the integrity check. Chief Hayworth believed that if plaintiff were involved with local drug dealers, he would "leak" the information that the police planned to execute the search warrant by rolling down his window and telling someone about the search warrant.

To determine whether plaintiff would tip-off drug dealers at the residence, Chief Hayworth had officers from the Investigations Division placed a pager under the front seat of plaintiff's patrol car, which could pick up plaintiff's conversation in the vehicle. The pager would then transmit the conversation back to a repeater box located in the trunk of the car, which, in turn, would transmit to a receiver located in another patrol car where other officers were listening.

After the integrity check was initiated, Detective Finch listened to the transmissions from plaintiff's patrol car for approximately 10 to 15 minutes, but only heard him order lunch. After Detective Finch notified Chief Hayworth that plaintiff had not tipped-off anyone regarding the execution of the search warrant, Chief Hayworth terminated the integrity check, called off the execution of the fake search warrant, and ordered the officers, including plaintiff, to return to the police station. When plaintiff returned, the pager and repeater box were removed from his patrol car. No further action was taken by Chief Hayworth regarding the allegations against plaintiff.

Plaintiff was separated from the Zebulon Police Depart in July 2005 for reasons unrelated to the integrity check. On 22 October 2007, plaintiff filed a complaint against defendants, alleging that the integrity check violated North Carolina's wiretapping law and claiming defendants were liable for actual damages, punitive damages, attorney's fees, and litigation costs. Defendants filed an answer generally denying plaintiff's claim and moving to dismiss the complaint.

**WRIGHT v. TOWN OF ZEBULON**

[202 N.C. App. 540 (2010)]

On 13 February 2009 defendants moved for summary judgment and on 23 March 2009 the trial court entered an order granting defendants' motion. Plaintiff timely appealed to this Court.

I

**[1]** Before reaching the merits of plaintiff's claim, we address defendants' argument that summary judgment was proper with respect to certain defendants as they are entitled to dismissal as a matter of law. Defendants first contend that the Zebulon Police Department should be dismissed as a defendant because it is not a "public entity . . . that can sue or be sued." Under North Carolina law, unless a statute provides to the contrary, only persons in being may be sued. *McPherson v. First & Citizens Nat. Bank of Elizabeth City*, 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954). "In North Carolina there is no statute authorizing suit against a police department." *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), *overruled in part on other grounds by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997). A municipal police department is a component of the municipality, and, therefore, lacks the capacity to be sued. *Id.*; *see also Ostwalt v. Charlotte-Mecklenburg Bd. of Educ.*, 614 F. Supp. 2d 603, 607 (W.D.N.C. 2008) (holding, per *Coleman*, that city police department was "entitled to dismissal as a matter of law" from negligence action). The trial court, therefore, properly granted summary judgment in favor of defendants with respect to the Zebulon Police Department.

Defendants next argue that the official capacity claims asserted against the individual defendants should be dismissed as being duplicative of the claim against the Town of Zebulon, their employer. Plaintiff sued Mayor Matheny, Town Manager Hardin, Police Chief Hayworth, and Officers McGlothlin, Finch, and Grossman in both their official and individual capacities. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 87 L. Ed. 2d 114, 121 (1985)). Thus, "in a suit where the plaintiff asserts a claim against a government entity, [also naming] those individuals working in their official capacity for th[e] government entity is redundant." *May v. City of Durham*, 136 N.C. App. 578, 584, 525 S.E.2d 223, 229 (2000); *accord Oakwood Acceptance Corp. v. Massengill*, 162 N.C. App. 199, 211-12, 590 S.E.2d 412, 422 (2004) (holding that claims against county tax collector were "identical" to clams asserted against county and thus trial court prop-

erly dismissed claims against tax collector on summary judgment). The official-capacity claims were properly dismissed in this case.

II

**[2]** Turning to plaintiff's contentions, he argues that the trial court erred in granting defendants' motion for summary judgment. On appeal, an order granting summary judgment is reviewed de novo. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (quoting N.C. R. Civ. P. 56(c)).

Plaintiff contends that summary judgment was improper because triable issues of fact exist regarding whether defendants violated the NCESA, which provides in pertinent part that a person violates the Act if, "without the consent of at least one party to the communication," the person "[w]illfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." N.C. Gen. Stat. § 15A-287(a)(1) (2009). The NCESA establishes a civil cause of action for persons whose communications are intercepted, disclosed or used in violation of the NCESA against the person or persons violating the Act, and provides for the recovery of damages, attorney's fees, and associated litigation costs. N.C. Gen. Stat. § 15A-296(a) (2009); *Kroh v. Kroh*, 152 N.C. App. 347, 351, 567 S.E.2d 760, 763 (2002), *disc. review denied*, 356 N.C. 673, 577 S.E.2d 120 (2003). Plaintiff argues that his evidence establishes a *prima facie* case that defendants willfully intercepted plaintiff's oral communications in his patrol car in violation of N.C. Gen. Stat. § 15A-287(a)(1).

The NCESA defines the term "intercept" to mean "the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device." N.C. Gen. Stat. § 15A-286(13) (2009). An "oral communication" denotes "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." N.C. Gen. Stat. § 15A-286(17).

Defendants argue that the motivation behind the integrity check was public safety and thus their "conduct in this case was not 'will-

ful,' as that word has been interpreted under North Carolina law." As the NCESA does not define the term "willful," this Court has looked to federal courts' construction of the Federal Wiretapping Act, 18 U.S.C. §§ 2510 to 2522, which the NCESA is "modeled after . . . ." *State v. McGriff*, 151 N.C. App. 631, 638, 566 S.E.2d 776, 781 (2002); *see also State v. Price*, 170 N.C. App. 57, 65, 611 S.E.2d 891, 897 (2005) (noting that "[t]he North Carolina and federal wiretapping laws . . . are substantially similar"). Although the Federal Wiretapping Act also does not define the term, federal courts have construed " 'willfully' to mean *more than* intentional[,]" *United States v. Ross*, 713 F.2d 389, 391 (8th Cir. 1983), requiring that the challenged conduct be " 'done with a bad purpose,' 'without justifiable excuse,' 'or 'stub bornly, obstinately, or perversely.' " *McGriff*, 151 N.C. App. at 639, 566 S.E.2d at 781 (quoting *Adams v. Sumner*, 39 F.3d 933, 936 (9th Cir. 1994)).[1]

In his affidavit submitted in support of defendants' motion for summary judgment, Chief Hayworth stated that between 2002 and 2005, he received three complaints that plaintiff was "tipping-off" illegal drug dealers about confidential police information and socializing with drug dealers. Chief Hayworth decided to conduct an integrity check in order to "attempt to ascertain whether [plaintiff] was a 'dirty' cop,' or if he was otherwise engaging in activity that was putting the citizens of Zebulon, as well as its police officers and informants, in danger o[f] harm." Sergeant Finch, one of the officers who placed the surveillance device in plaintiff's patrol car, reiterated in his affidavit that the integrity check was designed to "protect the public."

In response to defendants' motion for summary judgment, plaintiff submitted the deposition of Chief Hayworth. His deposition, however, corroborates his statements in his affidavit with respect to whether the integrity check was conducted "willfully." Chief Hayworth states that he authorized the integrity check on plaintiff because of his concern about the complaints that plaintiff was tip-

---

1. We note that plaintiff lumps all the remaining defendants together, simply asserting that they collectively violated N.C. Gen. Stat. § 15A-287(a)(1). On appeal, plaintiff fails to point to anything in his forecast of evidence indicating that Matheny, Zebulon's mayor, or Hardin, the town's manager, knew or should have known, condoned, or participated in the integrity check. In fact, the only reference to Matheny and Hardin in plaintiff's brief is his acknowledgment that they were the mayor and town manager, respectively, "[a]t all times pertinent to this action . . . ." Thus, having failed to forecast any evidence tending to establish that Matheny or Hardin were involved in any way in the integrity check, plaintiff cannot establish that Matheny and Hardin "willfully" violated N.C. Gen. Stat. § 15A-287(a)(1). Summary judgment was, therefore, proper with respect to Matheny and Hardin in their individual capacities.

ping-off possible drug dealers and was worried that such disclosures would endanger police officers, informants, and the public.

Based on Chief Hayworth's statements that the purpose of the integrity check was to ensure public safety, defendants did not act with a bad purpose or without justifiable excuse. *See id.* at 638-40, 566 S.E.2d at 780 (holding that neighbor had not "willfully" intercepted telephone conversation where neighbor's cordless telephone picked up defendant's incriminating phone call and neighbor continued to listen to identify speaker because call was " 'so disturbing and so ugly,' it caused her alarm" and was "done out of concern for the welfare of a minor"); *see also Adams,* 39 F.3d at 936 ("The [hotel] clerk's continued eavesdropping was not done with a bad purpose or without a justifiable excuse. When he heard the callers mention a gun, he was alerted to the possibility of illegal activity occurring in the hotel and was justified in listening to the conversation to determine whether his concern was merited."). Plaintiff points to nothing in his forecast of evidence that contradicts Chief Hayworth's statements that public safety was the impetus for the integrity check, thus creating a genuine issue of material fact regarding whether defendants "willfully" intercepted plaintiff's oral communication. The trial court, therefore, properly granted summary judgment in favor of defendants. Due to our disposition of this appeal, we need not address defendants' remaining arguments as to why summary judgment was proper.

Affirmed.

Judges BRYANT and JACKSON concur.