IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-785

Filed: 3 March 2020

Person County, No. 18 CVS 650

ESTATE OF MELVIN JOSEPH LONG, by and through MARLA HUDSON LONG, Administratrix, Plaintiff-Appellant,

v.

JAMES D. FOWLER, Individually, DAVID A. MATTHEWS, Individually, DENNIS F. KINSLER, Individually, ROBERT J. BURNS, Individually, MICHAEL T. VANCOUR, Individually, and MICHAEL S. SCARBOROUGH, Individually, Defendants-Appellees.

Appeal by Plaintiff from order entered 3 May 2019 by Judge Josephine K. Davis in Person County Superior Court. Heard in the Court of Appeals 5 February 2020.

> *Hardison & Cochran, PLLC, by John Paul Godwin, and Sanford Thompson, PLLC, by Sanford Thompson, IV, for Plaintiff.*
>
> *Parker Poe Adams & Bernstein LLP, by Jonathan E. Hall, Patrick M. Meacham, and Catherine R. L. Lawson, for Defendants.*

BROOK, Judge.

Marla Hudson Long ("Plaintiff"), as Administratrix of the Estate of Melvin Joseph Long ("Mr. Long"), appeals from the trial court's order dismissing her claims against James D. Fowler, David A. Matthews, Dennis F. Kinsler, Robert J. Burns, Michael T. Vancour, and Michael S. Scarborough (collectively "Defendants") for the

wrongful death of her husband, Mr. Long. For the following reasons, we reverse the order of the trial court.

## I. Factual and Procedural Background

On 20 January 2017, Mr. Long, a pipefitter with Quate Industrial Services, was tasked with reconnecting the water pipes of a portable chiller machine at North Carolina State University's ("NCSU") Centennial Campus that had been turned off for winter break. When Mr. Long began to loosen a 13.1-pound metal flange on a water pipe, pressurized gas, which had built up within the machine, forcefully projected the flange into his head. Mr. Long suffered severe head trauma and died five days later at the hospital.

Plaintiff commenced an action in the Industrial Commission on 15 March 2018 for wrongful death on behalf of the estate of her husband, Mr. Long, against NCSU, Randy Woodson, Allen Boyette, and "John Doe," the then-"unidentified employee/agent of [NCSU]'s machine shop and/or Maintenance and Operations Division."[1] Plaintiff alleged that John Doe had improperly shut down the chiller unit, which caused high pressure gas to leak into the water pipes so that when Mr. Long loosened the metal flange, compressed gas was exposed to air and caused the flange to explode.

---

[1] At the time of the filing of the Industrial Commission complaint, Randy Woodson was NCSU's Chancellor and Allen Boyette was the director of NCSU's Building Maintenance and Operations Division.

Plaintiff subsequently filed a wrongful death action in Person County Superior Court on 13 November 2018 against Defendants, employees in the maintenance and HVAC department at NCSU, seeking compensatory and punitive damages.[2] Plaintiff alleged Defendants negligently shut down the chiller unit on 21 December 2016, which led to the explosion that killed Mr. Long. The complaint's case caption read as follows:

> JAMES D. FOWLER, Individually,
> DAVID A. MATTHEWS, Individually,
> DENNIS F. KINSLER, Individually,
> ROBERT J. BURNS, Individually,
> MICHAEL T. VANCOUR, Individually,
> and MICHAEL S. SCARBOROUGH, Individually,
> Defendants.

The complaint sought relief from each of the abovenamed Defendants, jointly and severally, as follows:

> 1. Compensatory damages from defendant Fowler in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).
>
> 2. Punitive damages from defendant Fowler in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).
>
> 3. Compensatory damages from defendant Matthews in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).
>
> 4. Punitive damages from defendant Matthews in an amount in excess of TWENTY-FIVE THOUSAND

---

[2] Plaintiff's counsel stated during the hearing on the motions to dismiss at issue that they learned the identity of Defendants through discovery in the Industrial Commission proceedings.

DOLLARS ($25,000).

5. Compensatory damages from defendant Kinsler in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

6. Punitive damages from defendant Kinsler in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

7. Compensatory damages from defendant Burns in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

8. Punitive damages from defendant Burns in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

9. Compensatory damages from defendant Vancour in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

10. Punitive damages from defendant Vancour in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

11. Compensatory damages from defendant Scarborough in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

12. Punitive damages from defendant Scarborough in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000).

Proceedings in the Industrial Commission were stayed pending final adjudication of the superior court matter.

On 19 February 2019, Defendants filed motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. The trial court heard arguments on Defendants' motions to dismiss on 8 April 2019. Defense counsel argued that Defendants were sued in their official capacity, which meant they were entitled to share in their government-employer's sovereign immunity, and the Industrial Commission maintained exclusive jurisdiction over the action. Defense counsel also argued that the complaint failed as a matter of law to properly allege negligence, gross negligence, and state a claim for punitive damages. The trial court granted Defendants' motions to dismiss on 3 May 2019.

Plaintiff timely appealed.

## II. Analysis

On appeal, Plaintiff contends the trial court erred in granting Defendants' motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(2) because Defendants were sued in their individual, not official, capacities, and, as such, sovereign immunity does not apply to the case at bar.

Plaintiff next argues the trial court erred in allowing Defendants' motion to dismiss under Rule 12(b)(6) because the complaint gave sufficient notice of a legally cognizable claim of negligence and gross negligence as well as, based on allegations of willful and wanton conduct by Defendants, punitive damages.

For the following reasons, we agree with Plaintiff.

## A. Rule 12(b)(1) and Rule 12(b)(2) Motions to Dismiss

First, we consider whether the trial court properly dismissed Plaintiff's claim pursuant to Rules 12(b)(1) and 12(b)(2) for lack of subject matter and personal jurisdiction, which requires determining whether Defendants were sued in their official capacity and are thus protected from suit under the doctrine of sovereign immunity.[3]

### i. Standard of Review

The standard of review of a motion to dismiss for lack of subject matter jurisdiction is de novo. *Brown v. N.C. Dept. of Public Safety*, 256 N.C. App. 425, 427, 808 S.E.2d 322, 324 (2017). When a trial court grants a motion to dismiss for lack of personal jurisdiction, the standard of review is "whether the record contains evidence that would support the Court's determination that the exercise of jurisdiction over

---

[3] "A motion to dismiss based on sovereign immunity is a jurisdictional issue; whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina." *M Series Rebuild, LLC v. Town of Mount Pleasant*, 222 N.C. App. 59, 62, 730 S.E.2d 254, 257 (2012). "[F]ederal courts have tended to minimize the importance of the designation of a sovereign immunity defense as either a Rule 12(b)(1) . . . or a Rule 12(b)(2) motion." *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327-28, 293 S.E.2d 182, 184 (1982). However, the "distinction becomes crucial in North Carolina" in cases like that of *Teachy v. Coble Dairies, Inc.* when the denial of a Rule 12(b)(2) motion allows for immediate appeal while the denial of a Rule 12(b)(1) motion does not. *Id.* at 328, 293 S.E.2d at 184. The distinction is not crucial to our determination of the instant case as this case is before us as an appeal from a final judgment in superior court under N.C. Gen. Stat. § 7A-27(b)(1) (2019), *see Stacy v. Merrill*, 191 N.C. App. 131, 134, 664 S.E.2d 565, 567 (2008) (reviewing whether sovereign immunity prevented plaintiffs from bringing suit against defendants when suit was dismissed pursuant to both Rules 12(b)(1) and 12(b)(2)), and Plaintiff prevails regardless of the governing standard of review.

defendants would be inappropriate." *Stacy*, 191 N.C. App. at 134, 664 S.E.2d at 567 (citation omitted).

## ii. Merits

At common law, the doctrine of sovereign immunity protected the state from any liability for negligent or tortious conduct on the part of the state or its agents. *See Moody v. State Prison*, 128 N.C. 9, 12, 38 S.E. 131, 132 (1901), *superseded by statute*, N.C. Gen. Stat. § 143-291 (2019), *as recognized in Hocheiser v. North Carolina Dep't of Transp.*, 82 N.C. App. 712, 715, 348 S.E.2d 140, 141 (1986).

The North Carolina Tort Claims Act partially waived state immunity and allows tort claims against state agencies to be maintained in the exclusive jurisdiction of the North Carolina Industrial Commission. N.C. Gen. Stat. § 143-291 (2019). The Tort Claims Act provides in pertinent part:

> The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

*Id.* § 143-291(a). "[A] statutory waiver of sovereign immunity must be strictly

construed." *Meyer v. Walls*, 347 N.C. 97, 107, 489 S.E.2d 880, 885 (1997). "Therefore, the Tort Claims Act applies only to actions against state departments, institutions, and agencies and does not apply to claims against officers, employees, involuntary servants, and agents of the State." *Id.* at 107, 489 S.E.2d at 885-86.

As a corollary, "[a] plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and a suit against the negligent agent or employee in the General Court of Justice for common-law negligence." *Id.* at 108, 489 S.E.2d at 886 (citation omitted); *see also Chastain v. Arndt*, 253 N.C. App. 8, 15, 800 S.E.2d 68, 75 (2017) (explaining plaintiff could bring suit against the state agency in the Industrial Commission and suit against the negligent employee in his individual capacity alleging gross negligence and willful and wanton conduct). The "threshold issue to be determined" in a common law action is whether the negligence suit is brought against the employee in an official or individual capacity. *Mullis v. Sechrest*, 347 N.C. 548, 551, 495 S.E.2d 721, 723 (1998). When an actor is sued in his or her official capacity, the suit is effectively one against his or her employer, and the defendant is immune to the same extent as the government entity itself unless there has been a waiver of immunity. *Wright v. Town of Zebulon*, 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010) (citation omitted). In an individual capacity suit, on the other hand, a plaintiff seeks recovery from the defendant directly and sovereign

immunity does not protect the negligent employee.  *See Chastain*, 253 N.C. App. at

15, 800 S.E.2d at 74.[4]

Differentiating between an official and individual capacity suit turns on "the

nature of the relief sought, *not the nature of the act or omission alleged.*"  *Meyer*, 347

N.C. at 110, 489 S.E.2d at 887 (citations omitted) (emphasis added).

> It is a simple matter for attorneys to clarify the capacity in
> which a defendant is being sued.  Pleadings should indicate
> in the caption the capacity in which a plaintiff intends to
> hold a defendant liable.  For example, including the words
> "in his official capacity" or "in his individual capacity" after
> a defendant's name obviously clarifies the defendant's
> status.  In addition, the allegations as to the extent of
> liability claimed should provide further evidence of
> capacity.  Finally, in the prayer for relief, plaintiffs should
> indicate whether they seek to recover damages from the
> defendant individually or as an agent of the governmental
> entity.

*Mullis*, 347 N.C. at 554, 495 S.E.2d at 724-25.  Beyond the four corners of the

complaint, if money damages are sought "it is appropriate to consider the course of

the proceedings . . . to determine the capacity in which defendant is being sued." *Id.*

at 553, 495 S.E.2d at 724.

*Mullis v. Sechrest*, involving an injury to student Blaine Mullis in Harry

Sechrest's shop class at a high school in the Charlotte-Mecklenburg school system,

---

[4] As our Court explained in affirming the trial court's denial of a motion to dismiss in *Chastain*, allowing an individual capacity negligence suit and Tort Claims Act suit to both proceed out of a common factual origin does not permit a plaintiff to receive a double recovery in excess of the damages sustained.  253 N.C. App. at 15, 800 S.E.2d at 74.

demonstrates how this inquiry operates in practice. *Id.* at 549-50, 495 S.E.2d at 721-22. First, our Supreme Court noted "plaintiffs failed to specify whether they were suing defendant Sechrest in his individual or official capacity" in the caption or elsewhere in the complaint. *Id.* at 553, 495 S.E.2d at 724. Along the same lines, though the complaint specifically named the teacher when it alleged he had failed to give reasonable or adequate instructions, our Supreme Court "note[d] it was necessary to allege defendant [teacher's] negligence in the complaint" in order to establish liability for the school board. *Id.* The plaintiffs furthermore had set forth only one claim for relief, which was that "the Defendant Charlotte[-]Mecklenburg School System provided, permitted and directed the operation of a Rockwell tilting arbor saw, model # 34-399 in its industrial arts class." *Id.*; *see also White v. Cochran*, 216 N.C. App. 125, 131, 716 S.E.2d 420, 425 (2011) (using the phrase "joint and several" indicates relief is sought in the defendants' individual capacities). Finally, in reviewing the course of proceedings, the Court noted that the plaintiffs had amended their complaint to reference the defendants' liability insurance. *Mullis*, 347 N.C. App. at 553, 495 S.E.2d at 724. Generally, the purchase of liability insurance waives immunity for cities and counties, *see Meyer*, 347 N.C. at 108, 489 S.E.2d at 886, which is relevant in an official capacity action but not an individual capacity suit, *see id.* at 111, 489 S.E.2d at 888. "Taken as a whole, the amended complaint, along with the course of proceedings in the present case, indicate[d] an intent by

plaintiffs to sue defendant Sechrest in his official capacity." *Mullis*, 347 N.C. at 554, 495 S.E.2d at 725.

Defendants argue that the superior court action is impermissibly duplicative of the claim pending in the Industrial Commission. They note that the allegations in the Industrial Commission and superior court complaints are "identical, and the monetary damages sought by Appellant in the two cases are based on the same alleged actions by Appellees." They further argue that, in spite of the fact that Plaintiff "did not include an agency theory in th[e superior court] case[,]" this is, at bottom, the theory upon which the suit proceeds.

Though Defendants are correct that the two cases arise out of the same event, Plaintiff may commence both actions for two related reasons. First, as noted above and despite the common factual origin, Plaintiff is permitted to bring both an action against NCSU in the Industrial Commission and against Defendants in the superior court so long as she has properly alleged an individual capacity suit. *See Meyer*, 347 N.C. at 108, 489 S.E.2d at 886. Second,

> [w]hether the allegations relate to actions outside the scope of defendant's official duties is not relevant in determining whether the defendant is being sued in his or her official or individual capacity. To hold otherwise would contradict North Carolina Supreme Court cases that have held or stated that public employees may be held individually liable for mere negligence in the performance of their duties.

*Id.* at 111, 489 S.E.2d at 888 (citations omitted); *see also Boyd v. Robeson County*, 169 N.C. App. 460, 477-78, 621 S.E.2d 1, 12 (concluding plaintiff intended an individual capacity suit against detention officers notwithstanding "the substantive allegations related solely to actions undertaken by the deputy as part of his official duties.").

Focusing our inquiry as the case law dictates, the complaint and the course of proceedings reveal Plaintiff intended to bring an individual capacity suit. The case caption clearly states that Defendants are being sued in their individual capacities and does not name the state, a state entity, or NCSU. *See Mullis*, 347 N.C. at 552, 495 S.E.2d at 724 ("[P]leadings should . . . clearly state[] the capacity in which [defendants are] being sued."). Likewise, in the prayer for relief, Plaintiff explicitly notes relief is sought "individually" as well as "jointly and severally." *See Schmidt v. Breeden*, 134 N.C. App. 248, 257, 517 S.E.2d 171, 177 (1999) (concluding the language of joint and several in "plaintiff's request for relief indeed implies that damages [we]re [being] sought from the . . . pocket" of defendants in their individual capacities).

As to the allegations in the superior court complaint, Plaintiff pled six causes of action against the six individual Defendants, naming them individually liable. For example, Plaintiff alleged that

> 149. Between December 21, 2016 and January 20, 2017 at all times pertinent to this action, *defendant Fowler*, individually, and or jointly with the other defendants, was negligent by one or more of the following acts or omissions:
>
> a. *He* improperly drained water from the carrier

chiller;

> b. *He* did not fill the Carrier chiller with glycol, ethylene glycol or some other anti-freeze after draining water from it;

> c. *He* left the Carrier chiller outside when he knew or should have known there was still water in the chiller tubes[.]

(Emphasis added.)  And so on for the five other defendants, demonstrating an intent to bring suit against Defendants individually and not against NCSU.  In contrast, Plaintiff alleged in the Industrial Commission amended complaint,

> 39.  That the *Defendant North Carolina State University* was responsible for seeing that the chiller was inspected, maintained, and operating according to manufacturer specifications and industry standards.

> . . .

> 46.  That the *Defendant North Carolina State University* and its agents and employees knew, or through the exercise of reasonable care should have known, that attempting to drain and purge a chiller unit with damaged and deteriorating tubes that were leaking would cause coolant and/or other substances to remain in the system.

(Emphasis added.)

Furthermore, the allegations in the superior court action specifically contemplate the public official and public employee distinction, which is pertinent in an individual capacity suit but not in a suit against the state entity.  In an individual capacity claim, the defendant's status as a public official or public employee can

protect him or her from liability for injuries he or she has caused. *Meyer*, 347 N.C. at 112, 489 S.E.2d at 888 ("Public officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties; public employees can.") (citations omitted). The distinction is immaterial in an official capacity suit. *Epps v. Duke Univ.*, 122 N.C. App. 198, 203, 468 S.E.2d 846, 850 (1996) ("A suit against a public official in his official capacity is basically a suit against the public entity (*i.e.*, the state) he represents. Therefore, an official capacity suit operates against the public entity itself, as the public entity is ultimately financially responsible for the compensable conduct of its officers.").

Turning finally to the course of proceedings, Plaintiff first brought suit in the Industrial Commission, following the proper pleading format for an action against a state entity by filing an affidavit that contained: (1) the name of the claimant, the Estate of Mr. Long; (2) the name of the institution and the name of the state employee upon whose alleged negligence the claim was based, NCSU and "John Doe," the "as-yet unidentified negligent employee"; (3) the time and place where the injury occurred, NCSU's campus on 20 January 2017; (4) a brief statement of the facts and circumstances surrounding the injury giving rise to the claim; and (5) the damages sought to be recovered. *See* N.C. Gen. Stat. § 143-297 (2019) (setting forth these requirements in order to invoke the jurisdiction of the Industrial Commission in a claim against a state agency). After learning of Defendants' identity during discovery

in the Industrial Commission proceedings, Plaintiff then filed a complaint against the allegedly negligent employees in superior court. As explained above, this filing followed the pleading requirements for an individual capacity suit against an alleged negligent state employee as explained in *Mullis*. 347 N.C. at 554, 495 S.E.2d at 724-25. This progression follows our case law's guidance for seeking recovery from both State and named individual defendants.

We therefore conclude that Plaintiff seeks recovery against Defendants in their individual capacities. Consequently, we reject Defendants' characterization of this action as an official capacity suit from which they are immune. The trial court thus erred in granting Defendants' motion to dismiss for lack of subject matter and personal jurisdiction.

## B. Rule 12(b)(6) Motion to Dismiss

Next, we consider whether the trial court properly dismissed Plaintiff's claim under Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

### i. Standard of Review

This Court reviews a trial court's ruling on a Rule 12(b)(6) motion de novo. *Grich v. Mantelco, LLC*, 228 N.C. App. 587, 589, 746 S.E.2d 316, 318 (2013).

### ii. Merits

A motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) tests the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161,

163 (1970). When analyzing a Rule 12(b)(6) motion, this Court is to take all factual allegations as true but should not presume legal conclusions. *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000). "The function of a motion to dismiss is to test the law of a claim, not the facts which support it." *Snyder v. Freeman*, 300 N.C. 204, 209, 266 S.E.2d 593, 597 (1980) (internal marks and citations omitted). "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton*, 277 N.C. at 103, 176 S.E.2d at 166 (citation omitted). We also note that a motion to dismiss under Rule 12(b)(6) "is disfavored by the courts and the pleadings will be liberally construed in the light most favorable to the nonmovant." *Mabrey v. Smith*, 144 N.C. App. 119, 124, 548 S.E.2d 183, 187 (2001).

Defendants argue that Plaintiff's complaint is deficient for two reasons. First, Plaintiff failed to properly allege proximate cause; that is, that Mr. Long's injury was a reasonably foreseeable consequence of Defendants' alleged conduct. And second, that Plaintiff failed to include well-pled factual allegations that Defendants' conduct was either grossly negligent or willful and wanton.

1. Proximate Cause

"A wrongful death negligence claim must be based on actionable negligence under the general rules of tort liability." *Id.* at 122, 548 S.E.2d at 186 (citation

omitted).  The elements of negligence are:  (1) legal duty; (2) breach of that duty; (3) actual and proximate causation; and (4) injury.  *Id.* (citation omitted).

> The test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant. Questions of proximate cause and foreseeability are questions of fact to be decided by the jury.  Thus, since proximate cause is a factual question, not a legal one, it is typically not appropriate to discuss in a motion to dismiss.

*Acosta v. Byrum*, 180 N.C. App. 562, 568-69, 638 S.E.2d 246, 251 (2006) (internal marks and citations omitted).  When a "complaint adequately recites the element of causation, an issue of fact for the jury to decide, plaintiff has made a sufficient pleading of causation under Rule 12(b)(6)."  *See Demarco v. Charlotte-Mecklenburg Hosp. Authority*, ___ N.C. App. ___, ___, 836 S.E.2d 322, 328 (2019).

Defendants argue that the allegations in Plaintiff's complaint as to proximate cause are "conclusory."  Defendants specifically label the complaint's assertions that Defendants "knew or should have known, pressure could build up inside the chiller" and yet failed to warn Mr. Long "that there was high pressure gas behind the metal flanges . . . [as] unwarranted deductions of fact and unreasonable inferences."

Here, the complaint alleges that each Defendant worked as a facilities maintenance technician in the maintenance and operations department at NCSU.  It then alleges that the chiller and operating manual warned that it was not possible to drain all the water from the chiller, and, in order to "prevent freeze-up damage," the

unit had to be filled with anti-freeze. The complaint asserts that each Defendant failed to follow these shutdown procedures, water froze in the pipes, the pipes burst, and pressure built within the machine. It then alleges that a 13.1-pound metal flange capped in place by the individual Defendants "was blown off by pressurized refrigerant gas inside the water pipe." Finally, it alleges that each Defendant "knew[] or should have known" his negligence "would be reasonably likely to result in injury or death," and Mr. Long's death was "a direct and proximate result of one or more acts or omissions of [each] defendant." Plaintiff's allegation of foreseeability is not an unreasonable inference but clearly is supported by the allegations within the complaint. Moreover, the complaint "adequately recites the element of causation." *Demarco*, ___ N.C. App. at ___, 836 S.E.2d at 328.

We conclude Plaintiff's allegations as to proximate cause were sufficient to withstand a motion to dismiss under Rule 12(b)(6).

### 2. Gross Negligence

"Gross negligence has been defined as wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (citations and internal marks omitted). "Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages." *Id.* (citations omitted).

Defendants argue that Plaintiff's allegations fail to meet the standard for gross negligence. Defendants claim no factual basis supports the assertion that Defendants knew or should have known that pressurized gas would build within the chiller's water pipes, much less that such conduct rises to the level of gross negligence.

As noted above, Plaintiff alleged here that Defendants did not exercise reasonable care to prevent the 13.1-pound metal flange from becoming exposed to pressure from the inside of the chiller, ignored winterization and shutdown procedures, knew or should have known pressurized gas would build within the machine, and failed to warn Mr. Long or his employer of this improper shutdown. The complaint further expressly alleges that in their acts, omissions, and failures, each Defendant "demonstrated a conscious or intentional disregard or indifference to the rights and safety of others, including [Mr.] Long, which [D]efendant[s] knew, or should have known, would be reasonably likely to result in injury or death and as such constituted willful or wanton conduct." Such allegations are sufficient to withstand a Rule 12(b)(6) motion. *See Suarez v. American Ramp. Co. (ARC)*, ___ N.C. App. ___, ___, 831 S.E.2d 885, 893 (2019). We thus conclude Plaintiff's complaint adequately states a claim for gross negligence, and the trial court erred in granting Defendants' motion to dismiss.

### III. Conclusion

For the reasons stated above, we reverse the trial court's dismissal of Plaintiff's claims.

REVERSED AND REMANDED.

Judge HAMPSON concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

## I. <u>Sovereign Immunity</u>

The question before the trial court and before this Court on Plaintiff's appeal is limited and boils down to a simple and single issue: whether any of the purported negligent acts or omissions of these five individuals, acting together or individually, occurred outside of or were unrelated to their public employment by North Carolina State University ("NCSU"). If not, the trial court's dismissal must be affirmed. The matter pending before the Industrial Commission is the exclusive and sole procedure for the recovery for the wrongful death of Melvin Joseph Long arising from injuries he allegedly suffered while working at NCSU.

"A motion to dismiss based on sovereign immunity is a jurisdictional issue." *M Series Rebuild, LLC v. Town of Mount Pleasant*, 222 N.C. App. 59, 62, 730 S.E.2d 254, 257 (2012). When ruling upon Defendants' motion to dismiss, the "threshold issue to be determined" is whether a negligence suit is brought against the employees for alleged acts which occurred in official or individual capacities. *Mullis v. Sechrest*, 347 N.C. 548, 551, 495 S.E.2d 721, 723 (1998).

When a defendant, who is a public employee, is sued for actions arising during his official capacity, the suit is effectively one against his public employer. Defendants are immune to the same extent as the government-employer entity itself, unless there has been a waiver of immunity. *See Wright v. Town of Zebulon*, 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010) (citation omitted). "[A] statutory waiver of

sovereign immunity must be strictly construed." *Meyer v. Walls*, 347 N.C. 97, 107, 489 S.E.2d 880, 885 (1997).

## II.  Motions to Dismiss

On 19 February 2019, these five individual Defendants filed motions to dismiss asserting: lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.  Defendants argue they were being sued for negligent acts occurring while at work and in their official capacity and all are entitled to their government-employer's sovereign immunity. Defendants argue the Industrial Commission maintains exclusive jurisdiction over Plaintiff's claims.

Plaintiff's complaint failed as a matter of law to properly allege negligence, gross negligence, or state a claim for punitive damages against Defendants individually by asserting actions for conduct arising during and solely out of their public employment.  The trial court granted Defendants' motions to dismiss on 29 April 2019.

Plaintiff acknowledged at oral argument this action was filed after she had asserted and filed a wrongful death action under the State Tort Claims Act in the Industrial Commission involving the identical acts she asserts here.  Plaintiff's allegations before the Industrial Commission and in her superior court complaint are

"identical, and the monetary damages sought by [Plaintiff] in the two cases are based on the same alleged actions by [Defendants]."

Plaintiff also "did not include an agency theory in th[e superior court] case[,]" the only theory upon which that suit proceeds. Nothing alleges any Defendant committed *any acts* that occurred outside of their employment with the State. Plaintiff also admitted at oral arguments that, after invoking a state tort claim against NCSU before the Industrial Commission and engaging in discovery, she moved to stay the proceeding pending before the Industrial Commission, rather than resolving her claims in that chosen forum.

No allegation shows any of the individuals named in the complaint ever knew of or had met the deceased, had any knowledge of his presence, or owed any individual duties to an unknown plaintiff. There is simply no allegation of the Defendants' asserted negligence that is independent of and apart from their public employment by NCSU, which places exclusive jurisdiction within and before the Industrial Commission. *Wright,* 202 N.C. App. at 543, 688 S.E.2d at 789.

Defendants argue the trial court properly dismissed Plaintiff's complaint as deficient for two reasons: (1) Plaintiff failed to properly allege proximate cause; that is, Mr. Long's injury was a reasonably foreseeable consequence of Defendants' alleged conduct; and, (2) Plaintiff failed to include well-pled factual allegations that Defendants' conduct was either grossly negligent or willful and wanton.

III.  Foreseeability and Proximate Cause

*Palsgraf v. Long Island Railroad Co.,* 162 N.E. 99, 99 (N.Y. 1928), is the leading case in American tort law addressing the issue of a defendant's liability to an unforeseeable plaintiff.  Judge (later Justice) Cardozo explained proximate cause and reasonable foreseeability of distant and remote acts and impact on an unknown plaintiff as follows: "the conduct of the defendants . . . if a wrong in its relation to the[ir employer], was not a wrong in its relation to the plaintiff, standing far away.  Relative[] to her it was not negligence at all." *Id.* at 102.  Judge Cardozo quoted *Pollock on Torts* and cited several cases for the proposition that "proof of negligence in the air, so to speak, will not do." *Id.*  Only if there is a duty to the injured plaintiff, the breach of which causes injury, can there be liability. *See id.*

Negligence which does no one harm is not a tort.  It is not enough, Judge Cardozo found, to prove negligence by the Defendants and damage to the Plaintiff's husband.  There must be a breach of a duty these Defendants owed to Plaintiff's husband.  Judge Cardozo traced the history of the law of negligence.  He noted and concluded that negligence evolved as an offshoot from the law of trespass, and Plaintiff cannot sue for trespass committed against a third party. *Id.*

Our Supreme Court has agreed with this analysis: "The breach of duty must be the cause of the damage.  The fact that the defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, which is sought to be

4

referred to the negligence, unless the connection of cause and effect is established." *Smith v. Whitley*, 223 N.C. 534, 535, 27 S.E.2d 442, 443 (1943) (citation omitted).

## IV. Willful and Wanton Conduct

Addressing Defendants' second contention, Plaintiff failed to include well-pled factual allegations that Defendants' conduct was either grossly negligent or willful and wanton. Nothing in the complaint alleges grossly negligent, or willful and wanton conduct to support a cause of action. Gross negligence and willful and wanton conduct describe the same conduct. *Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 50, 524 S.E.2d 53, 59 (1999). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Green v. Kearney*, 217 N.C. App. 65, 72, 719 S.E.2d 137, 142 (2011) (citation omitted). Gross negligence is "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Greene v. City of Greenville*, 225 N.C. App. 24, 26, 736 S.E.2d 833, 835 (2013) (citations omitted).

Our Court has found a substantial difference between alleged acts of negligence and gross negligence. "Negligence, a failure to use due care, be it slight or extreme, connotes inadvertence." *Green*, 217 N.C. App. at 71, 719 S.E.2d at 142 (citations and quotations omitted). Wanton conduct is done "in conscious and intentional disregard of and indifference to the rights and safety of others." *Id.* (citations and quotations omitted). Here, Plaintiff's complaint asserts no factual

5

basis or to warrant inferring that Defendants knew or should have known about the risk of pressurized gas build-up in the chiller's water pipes or acted with "intentional disregard of and indifference to the rights and safety of others." *Id.*

## V. Conclusion

As noted, Plaintiff admitted that her claims before the Industrial Commission are identical to those in her dismissed complaint without the allegation of Defendants' employment and agency with the State and NCSU. Under the State's sovereign immunity, the only basis for liability and recovery for Defendants' alleged negligent acts while public employees, is a claim under the State Tort Claims Act before the Industrial Commission. The General Assembly's "statutory waiver of sovereign immunity must be strictly construed." *Meyer*, 347 N.C. at 107, 489 S.E.2d at 885.

Plaintiff's allegations against Defendants as public employees judicially estops Plaintiff's identical assertions to impose individual liability upon Defendants for identical conduct that occurred as public employees. She cannot have it both ways. The trial court correctly ruled Plaintiff's complaint did not invoke the subject matter jurisdiction of the courts, nor against these Defendants personally or individually, and that her complaint had failed to state a claim in the superior court.

Plaintiff has chosen the Industrial Commission as her forum for the resolution of her claim for her husband's wrongful death for the asserted negligence of public

employees of the State under a waiver of the State's sovereign immunity. *See Walls*, 347 N.C. at 107, 489 S.E.2d at 885. The trial court's dismissal of Plaintiff's complaint was proper, lawful, and is properly affirmed. I respectfully dissent.