STATE OF NORTH CAROLINA v. RAMEL THEODORE TROY

No. COA08-1332

(Filed 21 July 2009)

**Evidence— recording jailhouse telephone calls—implied consent**

The trial court did not err by concluding that defendant gave his implied to consent to the recording of jailhouse telephone calls in which he made incriminating statements. Defendant argued that he had not heard the warning about monitoring and recording calls when these three-way calls were made, but he was aware from previous experience that telephone calls from the detention center were subject to being recorded. Furthermore, the warning was played every time an inmate made a call.

Appeal by defendant from judgments entered 5 September 2007 by Judge Gregory A. Weeks in Columbus County Superior Court. Heard in the Court of Appeals 22 April 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe, for the State.*

*Ann B. Petersen for defendant-appellant.*

HUNTER, ROBERT C., Judge.

On 13 August 2007 Ramel T. Troy ("defendant") was tried for the armed robbery and first degree murder of nineteen-year-old Jonathan Chase Powell ("Powell"). On 5 September 2007 he was convicted by a jury of both charges.[1] Defendant was sentenced to life imprisonment without parole for the murder conviction and 117 to 150 months imprisonment for the robbery with a dangerous weapon conviction.[2] Defendant now appeals. After careful review, we find no error.

---

1. Although the verdict sheets list 9 September 2007, the record indicates that the verdicts were actually rendered on 5 September 2007.

2. Defendant was convicted of first degree murder based on malice, premeditation, and deliberation, and pursuant to the felony murder rule. Accordingly, the trial court was not required to arrest judgment entered on the robbery with a dangerous weapon conviction. *State v. Bell*, 338 N.C. 363, 394, 450 S.E.2d 710, 727 (1994) ("[W]here defendant is convicted of first-degree murder based upon both premeditation and deliberation and felony murder, the underlying felony does not merge with the murder conviction and the trial court is free to impose a sentence thereon."), *cert. denied*, 515 U.S. 1163, 132 L. Ed. 2d 861 (1995).

## Background

The evidence at trial tended· to show that Powell left his parents' home, where he resided, on the evening of 27 March 2002 and never returned. On 29 March 2002, Powell's Honda Accord was found on the side of Rosendale Road supported by cinder blocks, as it had no tires or rims in tact. Erica Paulette ("Paulette") testified at trial that she traveled this road to get to and from work every day, and that when she was on her way home on 27 March 2009 at approximately 6:00 p.m., the car was not there. On her way to work the following morning at around 6:00 a.m., the car was on the side of the road. Evidence collected from the car included Powell's blood, unidentified DNA on cigarettes found in the ash tray, and unmatched fingerprints on the car and papers inside the car.

Powell's body was found on 17 April 2002 in a wooded, rural area of Columbus County. His body was propped against the root of a fallen tree. Due to the decomposed condition of the body, the medical examiner was unable to ascertain a definite cause of death, though a lethal gunshot wound to the neck was not ruled out. The medical examiner reported that it was unlikely that Powell was shot in the head as there was no evidence of damage to the skull. A search of the surrounding area where Powell's body was found yielded no evidence.

In August 2003, Tera Thomas ("Thomas"), defendant's former girlfriend, told police that defendant admitted to her that he killed Powell. According to Thomas, in November 2002, defendant stated to her that Powell had been in his neighborhood trying to sell ecstacy pills. Defendant said that he and Pepe Powell ("Pepe") lured Powell to another location under the guise that they wanted to buy drugs from him. Defendant and Pepe then beat Powell, knocking out his teeth, shot him in the head, and left him next to a tree. They then took speakers and amplifiers from Powell's car. Defendant offered Thomas these items. He further claimed that he threw the gun from a bridge while traveling to Myrtle Beach, South Carolina. After receiving this ·information, in August 2003, the investigating officers returned to the crime scene to perform another search and found a 9 mm Winchester shell casing at the root of the tree where the body was originally located.

In December 2004, Acie Kelly ("Kelly") told police that in March 2002, defendant arrived at his home driving a Honda. Pepe was also present, but arrived in a separate car. Pepe asked Kelly to remove a stereo from the Honda. They then went to Kelly's cousin's house

where Kelly removed the stereo. Kelly stated that defendant and Pepe were in possession of speakers that came from the Honda and that there was a black back-pack in the trunk of the Honda that defendant took with him that evening. Kelly described the Honda to police as light in color, but at trial, he identified the dark blue Honda from photographs presented. Kelly testified that when he, defendant, and Pepe left his cousin's house, they went to Fishman's garage where Pepe attempted to sell the rims from the Honda to a man named Matt Shaw ("Shaw"). Shaw testified that Pepe came to the garage that night alone in the Honda. Kelly further testified that after they left the garage, they abandoned the Honda on the side of the road.

In late March 2002, defendant, Kelly, Pepe, and two other men traveled to Myrtle Beach, South Carolina. All of the men, with the exception of Pepe, were arrested for possession of marijuana and held at the J. Reuben Long Detention Center in Conway, South Carolina.

On 31 March 2002, while he was in the detention center, defendant called Thomas two times. He called her again on 1 April 2009. At the time these calls were made, defendant and Thomas both heard a recorded message which stated, "[t]his call is subject to being monitored and recorded. Thank you for using Evercom." These calls were played to the trial court at the motion to suppress hearing, but were not the subject of the motion; rather, defendant sought to exclude two other calls made on 2 April and 4 April 2002. Both calls were originally placed by Kelly to Latoya Drayton ("Drayton"). Kelly then asked Drayton to make a "three-way" call on behalf of defendant. On 2 April 2002, Drayton made a three-way call to defendant's mother, and this conversation was recorded. Defendant told his mother that in order to help raise bail money, she should call Pepe and tell him to sell defendant's speakers and amp. On 4 April 2002, Drayton again made a three-way call on defendant's behalf, this time calling Pepe. Defendant asked Pepe if he had the "book bag" and Pepe responded that it was in "the van." He asked defendant what was in the book bag and defendant responded that "the amp" was in it. Pepe inquired as to why defendant left the book bag in the van, and defendant replied that he left it there because "that dude got missing." At a motion to suppress hearing, defendant requested that these two telephone conversations be excluded from evidence because defendant was not provided with a recorded message that his conversation could be monitored or recorded. The trial court declined to exclude the evidence and concluded as a matter of law that:

The defendant's use of the institutional telephone at J. Reuben Long Detention Center in Conway, South Carolina during his pretrial confinement on unrelated charges after being advised and warned that such telephone conversations were subject to being monitored and recorded constitutes implied consent to the monitoring and recording of such calls within the meaning of applicable Federal and State laws.

The sole issue on appeal is whether the trial court erred in refusing to exclude the 2 April and 4 April 2002 telephone conversations between defendant and his mother, and between defendant and Pepe.

Analysis

I. Standard of Review

"The standard of review in evaluating a trial court's ruling on a motion to suppress is whether the court's findings of fact are supported by competent evidence and if those findings of fact support the trial court's conclusions of law." *State v. Price*, 170 N.C. App. 57, 64, 611 S.E.2d 891, 896 (2005). The trial court's conclusions of law are reviewed *de novo* by this Court. *State v. Green*, 194 N.C. App. 623, 630, 670 S.E.2d 635, 640 (2009).

II.

Defendant argues that the trial court erred in concluding that he gave implied consent to the recording of the two telephone calls at issue in this case and therefore admitting these calls into evidence at trial violated federal and state law.[3]

North Carolina and federal wiretapping laws generally prohibit the interception of telephone conversations. 18 U.S.C. § 2511 (2009); N.C. Gen. Stat. § 15A-287 (2007). Consequently,

[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

---

3. Defendant does not assign error to any of the trial court's findings of fact. *Price*, 170 N.C. App. at 65, 611 S.E.2d at 896 ("If error is not assigned to any of the trial court's particular findings of fact, those findings are presumed to be supported by competent evidence and are therefore binding on appeal.").

18 U.S.C. § 2515 (2009). However, there is an exception when one of the parties to a telephone conversation consents to the interception. 18 U.S.C. § 2511(2)(c) (2009); N.C. Gen. Stat. § 15A-287(a).

According to the precedent set out by this Court in *State v. Price*, the Evercom warning that calls may be monitored and recorded is sufficient to place a defendant on notice, and his or her continuation of the telephone call constitutes implied consent to the recording. *Price*, 170 N.C. App. at 66, 611 S.E.2d at 897 (holding the trial court did not err in failing to suppress recorded conversations between the defendant and his mother where the Evercom recorded warning was utilized).

Here, it is undisputed that defendant heard the Evercom message on 31 March and 1 April 2002, only days before the 2 April and 4 April 2002 three-way calls were made. Defendant argues that since he did not hear the Evercom warning when the three-way calls were made, he did not give consent to the recording of the two calls, which distinguishes this case from *Price*. This argument is without merit.

Defendant was aware from his previous experience making outgoing calls that telephonic communications from the detention center were subject to being recorded. This knowledge is sufficient to find implied consent by defendant. Furthermore, the Evercom warning was played every time an inmate placed a call. According to *Price*, Kelly and Drayton impliedly consented to their calls being recorded, and each three-way transmission was a part of the same call. Accordingly, the trial court did not err in concluding as a matter of law that defendant gave implied consent to the recording of these calls, and therefore the trial court did not err in denying defendant's motion to suppress the evidence.

No error.

Judges McGEE and BEASLEY concur.