IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-20

Filed 16 July 2025

Wake County, No. 22CVD001738-910

CALVIN FRANK MORROW III, Plaintiff,

v.

KERRY SUSAN VALLANT MORROW, Defendant.

Appeal by plaintiff from order entered 13 June 2024 by Judge J. Brian Ratledge in Wake County District Court. Heard in the Court of Appeals 12 June 2025.

*Connell & Gelb, PLLC, by Michelle D. Connell, for plaintiff-appellant.*

*Sydney J. Batch for defendant-appellee.*

FLOOD, Judge.

Plaintiff Calvin Frank Morrow III appeals from the trial court's child custody order, granting joint physical and legal custody to Plaintiff and to Defendant, Kerry Susan Vallant Morrow. On appeal, Plaintiff argues the trial court erred by: first, failing to make an ultimate finding of fact that the child custody schedule it ordered was in the best interests of the minor children; second, failing to make findings of fact to support its decree that the parties must exchange child custody at 5:00 p.m. on Saturdays during the summer; third, granting Defendant custody for the weekend of Mother's Day holiday, but denying Plaintiff the same custody for the Father's Day

- 1 -

holiday; fourth, forbidding either party from recording one another during custodial exchanges; and fifth, not restricting international travel with the children only to countries which are parties to the Hague Convention.[1] Upon review, we conclude the trial court made a finding that the custody order was in the best interests of the minor children and did not abuse its discretion in ordering the custody-related decrees.

## I. Factual and Procedural Background

Plaintiff and Defendant married in 2009 and subsequently separated in 2022. Two minor children (the "children") were born from this marriage. On 11 February 2022, Plaintiff filed a complaint for divorce from bed and board, child custody, and temporary child custody; he later amended the complaint to include child support. Defendant filed her answer and counterclaims on 18 March 2022. On 31 March 2022, the parties subsequently entered into a consent order (the "Consent Order") for temporary child custody and temporary child support. In the Consent Order, the

---

[1] "The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions." 22 U.S.C.A. § 9001 (a)(1). "The Hague Convention provides a mandatory remedy of return [of minor children] that is meant both to preserve the status quo with respect to child custody and to deter parents from crossing international boundaries in search of a more sympathetic court." *Obo v. Steven B.*, 201 N.C. App. 532, 533 (2009) (citation omitted); *see also* N.C.G.S. § 50A-302 (2023) ("[A] court of this State may enforce an order for the return of the child made under the Hague Convention on the Civil Aspects of International Child Abduction as if it were a child-custody determination.").

parties stipulated that it was in the best interests of the minor children for the parties to share joint legal and physical "(50-50)" custody of the children, and that Plaintiff would pay Defendant $336 each month in child support.

The trial court held a hearing for child custody from 21–22 March 2024, and on 13 June 2024, the trial court entered a permanent order (the "Permanent Order") for child custody, granting the parties joint physical and legal custody, and setting forth a detailed custody schedule. In the Permanent Order, the trial court set out certain times and restrictions for custodial exchanges, and decreed specific summertime custody arrangements.

Plaintiff timely appealed.

## II. **Jurisdiction**

This Court has jurisdiction over a final judgment of a child custody order from a district court, pursuant to N.C.G.S. §§ 7A-27(b)(2) and 50-19.1 (2023).

## III. **Standard of Review**

When a trial court sits without a jury, this Court reviews the trial court's order to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Burger v. Smith*, 243 N.C. App. 233, 236 (2015) (citation omitted). "In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings." *Id.* at 236 (citation omitted). "Unchallenged findings of fact are binding on appeal."

*Id.* at 236 (citation omitted).

"It is a long-standing rule that the trial court is vested with broad discretion in cases involving child custody." *Pulliam v. Smith*, 348 N.C. 616, 624 (1998) (citation omitted). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777 (1985) (citation omitted). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 777. "[T]rial courts have the duty to decide domestic disputes, guided always by the best interests of the child and judicial objectivity. To that end, trial courts possess broad discretion to fashion custodial and visitation arrangements appropriate to the particular, often difficult, domestic situations before them." *Lovallo v. Sabato*, 216 N.C. App. 281, 285 (2011) (citation omitted).

Additionally, questions of statutory interpretation are reviewed de novo. *State v. Williams*, 911 S.E.2d 286, 294 (N.C. Ct. App. 2024) (citation omitted). "Where statutory language is clear and unambiguous, this Court eschews statutory construction in favor of giving the words their plain and definite meaning." *Id.* at 295.

## IV. <u>Analysis</u>

On appeal, Plaintiff argues that portions of the Permanent Order should be reversed and remanded for being unsupported by competent evidence. Specifically,

Plaintiff contends the trial court erred by: (A) failing to make an ultimate finding of fact that the child custody schedule it ordered was in the best interests of the minor children; (B) failing to make findings of fact to support its decree that the parties must exchange child custody at 5:00 p.m. on Saturdays during the summer; (C) granting Defendant custody for the weekend of the Mother's Day holiday, but denying Plaintiff the same custody for the Father's Day holiday; (D) forbidding either party from recording one another during custodial exchanges; and (E) not restricting international travel with the children to only countries that are parties to the Hague Convention. We address each argument, in turn.

## A. Best Interests Determination

Plaintiff first argues the trial court erred by failing to find that the Permanent Order was in the best interests of the minor children. Plaintiff contends that although the trial court found in the Permanent Order that, previously, "the parties stipulated it is in the best interest of the minor children for the parties to permanently share joint legal and physical custody of the children[,] . . . [the trial court] never finds that the physical custodial schedule ordered is in the best interest of the children." We disagree.

"An order for custody must include written findings of fact that . . . support the determination of what is in the best interest of the child." N.C.G.S. § 50-13.2 (2023).

Here, the trial court's unchallenged Finding of Fact 13 provides that "[e]ach party provides suitable housing and a safe environment for the minor children. In

every angle, the parties are solid, reliable parents to the minor children." Unchallenged Finding of Fact 14 provides that each party has "local family and often utilize[s] their own respective support system to help care for the minor children." Unchallenged Finding of Fact 17 provides that, "[t]he parties are fit and proper persons to exercise joint legal and physical custody of the minor children as set out more fully herein[,]" and the trial court later concludes that, as a matter of law, "[t]he child custody provisions setout [*sic*] herein are in the best interests of the minor children."

Collectively, these unchallenged, and thus binding, findings of fact support, and explicitly state that the trial court's determination that the physical custodial schedule it ordered is in the best interests of the children. *See* N.C.G.S. § 50-13.2; *see also Burger*, 243 N.C. App. at 236. Accordingly, the trial court properly determined that the physical custodial schedule it ordered is in the best interests of the children.

## B. Child Custody Exchange

Plaintiff next argues "[t]here was no evidence nor any findings of fact to support the trial court's decree that the parties must exchange child custody at 5:00 p.m. on Saturday[s] during the summer." We disagree.

Under our standard of review, as set forth above, the trial court has broad discretion over child custody cases, and its order will be overturned only if the ruling "was so arbitrary that it could not have been the result of a reasoned decision." *White*, 312 N.C. at 777; *see also Smith*, 348 N.C. at 624.

Here, the trial court ordered that, during the regular school calendar schedule (the "Regular Schedule"), the Martin Luther King holiday weekend, Memorial Day weekend, Labor Day weekend, and Mother's Day weekend will begin "from release of school on Friday preceding the holiday or 5:00pm (whichever first occurs) until Monday at 5:00pm," and explained that "[f]or the purposes of Summer, one (1) week shall be defined from Saturday at 5:00pm to the following Saturday at 5:00pm." We refer to the summer schedule provisions in the Permanent Order as the "Summer Schedule."

Plaintiff contends the decree of a Summer Schedule exchange time at 5:00 p.m. falls "right smack-dab in the middle of the weekend." Before the trial court, Plaintiff requested that the Summer Schedule exchange time be 9:00 a.m., but when asked if 9:00 a.m. worked for Defendant, Defendant testified: "It does not. That has actually been a major issue for me, especially in the summertime. It's created a big need for me to take a lot of time off because I'm supposed to be at work at 8:00 a.m." Defendant mentioned that an earlier exchange time would be better for her. Defendant also testified she was requesting "alternating weeks during the summer so that [she] can have a way to . . . enroll the [minor children] in camps without having to . . . depend on the cooperation of [Plaintiff] because that hasn't really been working out."

Further, Plaintiff argues the Permanent Order's "Additional Vacation Weekend" decree runs contrary to the 5:00 p.m. Summer Schedule exchange time. The Additional Vacation Weekend provision provides:

> Each party may designate one (1) weekend per year for special events to exercise custodial time with the minor children (when the party would otherwise be the non-custodial party based on the underlying custodial schedule), beginning on Friday at the recess of school (or, if school is not in session, at 5:00pm) and ending at the resumption of school (or, if school is not in session, at 8:30am on Monday) with sixty (60) days' written notice to the other party[.]

The decree further states: "The Additional Vacation Weekend, however, *shall not conflict* with the Holiday Schedule or Summer [] Schedule specified in this order[,]" and thus, the trial court understood the Additional Vacation Weekend decrees ran contrary to the summertime exchange, and explicitly gave priority to the set Summer Schedule.

Even if there is evidence in the Record that is contrary to a 5:00 p.m. decree as to a Summer Schedule exchange time, *see Burger*, 243 N.C. App. at 236, our review of the Record reveals nothing so arbitrary regarding the trial court's decision to set a 5:00 p.m. Summer Schedule exchange time that it could not have been the result of a reasoned decision, and thus, we cannot say that the trial court abused its discretion, *see White*, 312 N.C. at 777. It is the trial court's "duty to decide domestic disputes, guided always by the best interests of the child," and "to that end, trial courts possess broad discretion to fashion custodial and visitation arrangements appropriate to the particular, often difficult, domestic situations before them." *Lovallo*, 216 N.C. App. at 285. Here, the trial court found the child custody Summer Schedule exchange special dates and timing to be in the children's best interests; accordingly, we affirm

this provision of the trial court's order.

### C. Father's Day Visitation

Plaintiff next argues the trial court "erred by granting [Defendant] the weekend of Mother's Day holiday but denying [Plaintiff] the same custody for the Father's Day holiday." We disagree.

The trial court ordered the following:

> d. <u>Mother's Day</u>: Defendant shall have custodial time with the minor children for Mother's Day Weekend beginning the Friday preceding Mother's Day at 5:00pm until 5:00pm on Mother's Day Sunday.
>
> e. <u>Father's Day</u>: Since the parties are evenly splitting Summer Break as noted in Paragraph 5 hereinbelow, Plaintiff shall celebrate Father's Day during whatever his regular summer weeks in a given year turn out to be – some summers, depending upon selection priority, he may end up having the minor children during Father's Day weekend and, on other summers, he may not have the minor children during Father's Day weekend. For scheduling and simplicity purposes, no additional carve-out shall be made for Father's Day.

Plaintiff testified regarding Mother's Day and Father's Day, stating: "I don't feel [they] should be completely balanced split holiday [*sic*] because it's significant to the mother more than the father and vice versa. So I would think the large part of the day should be with the mother on Mother's Day and with the Father on Father's Day." He further testified: "I think that whatever's for one parent should be the same for the other . . . . [I]f I have the kids on Father's Day for six hours, she should have the kids on Mother's Day for six hours, unless it's already her weekend."

When asked about these two holidays, Defendant testified:

> Q. [W]ould you prefer that Father's Day and Mother's Day weekend be split – the actual day be split . . . or it be the entire weekend?
>
> A. I'd prefer the entire weekend.
>
> Q. And the entire weekend to him for Father's Day[?]
>
> A. Same on the other side. Yeah.

Plaintiff argues in his brief that "[t]he order should be reversed and remanded to award both parents equal custodial time on Mother's and Father's Day – just as requested by the parties[,]" and that the order "should also be reversed because it embraces the tender years doctrine by ordering custodial provisions favorable to mother simply because she is a mother."

Although the parties each testified that they would like to share these holidays, the two holidays fall during different schedules: the Regular Schedule and the Summer Schedule. Moreover, the trial court was not bound by any stipulation on this specific matter. *See Thomas v. Poole*, 54 N.C. App. 239, 241 (1981) (citations omitted) ("Parties may establish by stipulation any material fact that has been in controversy between them. Where the stipulations of [the] plaintiff and [the] defendant have been entered of record . . . the parties are bound and cannot take a position inconsistent with the stipulations."); *Smith v. Smith*, 387 N.C. 255, 259 (2025) ("While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision[.]" (citation

omitted)); *Despathy v. Despathy*, 149 N.C. App. 660, 662 (2002) ("[A] stipulation admitting a material fact becomes a judicial admission in a case and eliminates the necessity of submitting an issue in regard thereto to the jury[,]" and "[j]udicial admissions are binding on the pleader as well as the court." (citations and internal quotation marks omitted)); *Maddukuri v. Chintanippu*, 282 N.C. App. 119, 121–22 (2022) (explaining that there are stipulations of fact and stipulations for settlement, "some being mere admissions of fact relieving a party from the inconvenience of making proof, while others have all the characteristics of concessions of some rights as consideration for those secured[;] the courts have sometimes based the granting or denial of relief upon the nature of the stipulation" (citation omitted)).

While "[t]he effect of a stipulation by the parties withdraws a particular fact from the realm of dispute[,]" *see Estate of Carlsen v. Carlsen*, 165 N.C. App. 674, 678 (2004), such as here where the parties agreed to a shared custody agreement, the trial court had discretion on how to impose a shared custody arrangement in the best interests of the minor children, *see Lovallo,* 216 N.C. App. at 285. Here, the trial court explained: "I don't typically give Father's [D]ay a dedicated time in the summer when I'm splitting everything 50/50. It just makes the travel and the – – it just makes it much more difficult." Because the trial court had broad discretion over the shared child custody arrangement, and split the summer evenly between the parties, we cannot say the trial court abused its discretion in maintaining an evenly-split summer, where Mother's Day occurs during the Regular Schedule, and where

Father's Day may fall on a weekend during the Summer Schedule when Plaintiff does not have custody of the minor children. *See White*, 312 N.C. at 777; *Lovallo*, 216 N.C. App. at 285; *Smith*, 348 N.C. at 624. Accordingly, we affirm this provision of the trial court's order.

### D. Recording During Custodial Exchanges

Plaintiff next argues the trial court erred "by forbidding either party from recording one another during custodial exchanges where no evidence was presented at trial about this issue and no findings of fact support the decree." Relying on the federal wiretapping statute, 18 U.S.C. § 2511 of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Federal Wiretap Act") and N.C.G.S. § 15A-287 (2023) of North Carolina's Electronic Surveillance Act (the "Electronic Surveillance Act"), Plaintiff specifically contends he has "a legal right to record the custodial exchanges" that the trial court cannot prohibit. We disagree.

The Federal Wiretap Act provides, in relevant part:

> It shall not be unlawful under this chapter [18 U.S.C. §§ 2510 et seq.] for a person not acting under color of law to intercept a wire, oral, or electronic communication where *such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added); *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022) ("The Federal Wiretap Act

generally prohibits any person from intentionally recording an oral communication. One exception to this broad prohibition is that a person may record a conversation in which he or she is a party unless the 'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" (citation omitted)).

North Carolina's Electronic Surveillance Act, included under the Criminal Procedure Act's subchapter on "Law Enforcement and Investigative Procedures," provides, in relevant part:

> Except as otherwise specifically provided in this Article, a person is guilty of a Class H felony if, *without the consent of at least one party to the communication*, the person:
>
> (1) Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

N.C.G.S. § 15A-287(a)(1) (emphasis added). "North Carolina['s Electronic Surveillance Act] is modeled after the Federal Wiretap[ Act.]" *State v. McGriff*, 151 N.C. App. 631, 638 (2002); *see also* N.C.G.S. § 15A-297 (2023) ("It is the intent of this Article to conform the requirements of all interceptions of wire, oral, or electronic communications conducted by investigative or law enforcement officers in this State to provisions of [the Federal Wiretap Act], except where the context indicates a purpose to provide safeguards even more protective of individual privacy and constitutional rights."). In *Kroh v. Kroh*, this Court explained that "[w]hile our courts have not previously construed the Electronic Surveillance Act, we note the many

similarities between the Electronic Surveillance Act and the [F]ederal [W]iretap[ Act]" and "[l]ike [the Electronic Surveillance Act], the [Federal Wiretap] Act prohibits persons from intentionally intercepting, or endeavoring to intercept, any oral communication." 152 N.C. App. 347, 351 (2002). "'Intercept' means the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device." N.C.G.S. § 15A-286(13) (2023).

The Federal Wiretap Act and the Electronic Surveillance Act have primarily been construed in law enforcement and investigative procedure contexts, *see, e.g., State v. Troy*, 198 N.C. App. 396, 399–400 (2009) (holding the State did not violate the Federal Wiretap Act nor the Electronic Surveillance Act by intercepting the defendant's phone calls while he was at a detention facility); *State v. Price*, 170 N.C. App. 57, 66 (2005) (same); *Wright v. Town of Zebulon,* 202 N.C. App. 540, 545–46 (2010) (defining "willfully" under the Electronic Surveillance Act to mean to "act with a bad purpose or without justifiable excuse" where officers listened in on another officer's patrol car conversations for "public safety" reasons), and civil suits brought by plaintiffs claiming defendants had violated these statutes, *see, e.g., Kinesis Advert., Inc. v. Hill*, 187 N.C. App. 1, 18 (2007) (holding that an employer accessing stored voicemails and e-mails of former employees' work accounts did not violate the Federal Wiretap Act nor the Electronic Surveillance Act as the employer did not "intercept" those messages); *State v. McGriff*, 151 N.C. App. 631, 638–39 (2002) (holding a neighbor did not violate the Federal Wiretap Act nor the Electronic

- 14 -

Surveillance Act by intercepting another's phone call conversation when the neighbor's phone reception accidently picked it up).

In *Kroh*, a civil case brought by a husband against his wife for secretly recording him and their minor children, we considered whether, under the Federal Wiretap Act and the Electronic Surveillance Act, one spouse could secretly record the other in the family home, and whether a parent can vicariously consent to the recording of their minor children's conversations. 152 N.C. App. at 351–52. We held: "[T]he Electronic Surveillance Act prohibits non-consensual recordings by one spouse of the other even within their family home[.]" *Id.* at 350. We further adopted the vicarious consent doctrine, "thereby permitting a custodial parent to vicariously consent to the *recording of a minor child's conversations*, as long as the parent [] has a good faith, objectively reasonable belief that the interception of the conversations is necessary for the best interests of the child." *Id.* at 352–53 (emphasis added) (citation omitted) (cleaned up). We reversed the trial court's decision because we determined there was a genuine issue of material fact as to whether the wife's purpose in recording her children's conversation was for the safety of her children. *Id.* at 353.

Further, while this Court has not published a case addressing recording custodial exchanges, we have addressed this issue in an unpublished case; however, we did not discuss the Federal Wiretap Act or the Electronic Surveillance Act. *See Nesbeth v. Flynn*, 280 N.C. App. 561, *9–10 (2021) (unpublished). In *Nesbeth*, we held

the trial court did not abuse its discretion in decreeing that "during custodial exchanges, neither party shall photograph, video record, audio record or otherwise record the other party, the minor children, or an aspect of the exchange in any capacity" where the trial court found the "acts of videotaping were a significant source of contention between [the p]laintiff and [the d]efendant." *Id.* at \*10 (cleaned up).

In the instant case, the vicarious consent doctrine is inapplicable, as Plaintiff argues the trial court cannot prohibit recording where Plaintiff has "a *legal right* to record[,]" pursuant to the Federal Wiretap Act and the Electronic Surveillance Act. *See Kroh*, 152 N.C. App. at 352–53. Plaintiff thus does not argue that he may consent to the recording of the minor children's conversations, but rather argues he may consent to recording the custodial exchanges themselves, in which he is a direct participant. Assuming, *arguendo*, that the Federal Wiretap Act and the Electronic Surveillance Act apply in a child custody case, as Plaintiff argues, where one party consents to recording by conducting the recording himself, we nonetheless disagree with Plaintiff's argument that this right cannot be properly restricted by the trial court.

North Carolina law requires a trial court to establish child custody orders that "shall include such terms . . . as will best promote the interest and welfare of the child." N.C.G.S. § 50-13.2(b). As such, trial courts have broad discretion to enter orders with specific decrees in determining the best interests of the child. *See Falls v. Falls*, 52 N.C. App. 203, 209 (1981) (holding the trial court did not abuse its

discretion in imposing a decree that visitation with the father would be conditioned on the consent of the children where there was evidence of considerable physical violence between the mother and the father which one or more of the children witnessed or in which one or more of the children participated, even though there was evidence that both the father and the mother were competent adults who loved their children); *Maxwell v. Maxwell*, 212 N.C. App. 614, 621 (2011) (affirming a trial court's "authority to require [the p]laintiff to submit to a mental health evaluation [because of] the broad discretion granted to courts in child custody proceedings"); *Rawls v. Rawls*, 94 N.C. App. 670, 676–77 (1989) (holding the trial court did not abuse its discretion by requiring the defendant to consult a psychiatrist or a psychologist before awarding specific visitation rights).

Moreover, even when per se rights exist, a trial court may properly fashion child custody orders that limit such rights, when it would be in the child's best interests. *See Woncik v. Woncik*, 82 N.C. App. 244, 250 (1986) (upholding a decree by the trial court that limited each parent's speech by prohibiting them "to do or say anything either intended to, or likely to, discredit or diminish the other party in the eyes of the child"); N.C.G.S. § 50-13.2(b2) (providing that the trial court "may, as a condition of such custody or visitation, require either or both parents, or any other person seeking custody or visitation, to abstain from consuming alcohol and may require submission to a continuous alcohol monitoring system"); *see also Nesbeth v. Flynn*, 280 N.C. App. 561 at *10 (discussed supra).

Here, we see nothing in the Federal Wiretap Act nor the Electronic Surveillance Act to indicate recording rights during custodial exchanges cannot be restricted by the trial court when such restrictions are in the best interests of the children. 18 U.S.C. § 2511(2)(d); N.C.G.S. § 15A-287(a)(1). The trial court found that this "is a high conflict custody case because the parties demonstrate an ongoing pattern of: a. distrust between them; b. difficulty cooperating in the care of the minor children; and c. disruptive custodial exchanges." The trial court ordered the parties to "address one another courteously when they are in the presence of the children[,]" "act in every respect to nurture and encourage the respect and affection of the minor children for each of their parents[,]" and decreed that neither party shall "record the other party or the minor children during custodial exchanges[.]" Thus, in setting a prohibition on recording the custodial exchanges, the trial court took into consideration the need for the parties to be cordial and set certain provisions to further create courteous exchanges.

Accordingly, we hold the trial court did not abuse its discretion in preventing the parties from recording custodial exchanges where it found the exchanges were contentious and that prohibiting recording was in the best interests of the children. *See White*, 312 N.C. at 777; *Lovallo*, 216 N.C. App. at 285; *Smith*, 348 N.C. at 624; N.C.G.S. § 50-13.2.

### E. Restriction on International Travel

Plaintiff finally argues that the trial court erred "by not restricting

international travel with the children only to countries which are parties to the Hague Convention." Plaintiff is "concerned about the children traveling in countries that are not a member of the Hague Convention because such countries 'don't have a framework to quickly retrieve a child that ends up being abducted[,]'" and Plaintiff further notes that "India is not a party to the Hague Convention[,]" which is where Defendant's family is from, and where some family members continue to live. We disagree with Plaintiff's argument.

Here, Defendant testified that the parties had "already taken one of [their] children to India several years ago" and that she "grew up . . . traveling internationally quite a bit." She explained that international travel was "a huge part of what's made me who I am today and, you know, very enriching for children." Additionally, the following relevant discussion took place:

> Q. Is there any special significance for you to India in particular?
>
> A. Yes. My family -- my parents immigrated from India many years ago, and I have a very large family. I have [fifty] first cousins, and most of them live in India[.]
>
> Q. Would you like for the Court to provide some mechanism that would allow for international travel without the consent of both parents?
>
> A. Yes. Yes. I would.

Here, the trial court ordered:

> 14. <u>International Travel</u>. The parties may travel internationally with the minor children upon sixty [] days'

- 19 -

> notice to the other party. The traveling parent shall provide the other parent [a] full itinerary for the trip, including the location of travel, the name of the hotel or other accommodations, the dates of travel and all adults traveling with the minor children. Both parties shall execute any documents necessary to keep the minor children's passports active in order to accommodate international travel and shall exchange passports as needed upon request from the other parent.

Again, where the trial court has broad discretion over child custody cases, we conclude the trial court did not abuse its discretion by not restricting the minor children from visiting countries not a party to the Hague Convention, including India—the country from which Defendant hails. *See White*, 312 N.C. at 777; *Lovallo*, 216 N.C. App. at 285; *Smith*, 348 N.C. at 624; N.C.G.S. § 50-13.2. Accordingly, we affirm this provision of the trial court's order.

## V. <u>Conclusion</u>

Upon review, we conclude the trial court did not abuse its discretion in: ordering a 5:00 p.m. Summer Schedule exchange time; splitting the summer evenly, though Plaintiff may miss custodial time on Father's Day; placing a "no recording" restriction on the custodial exchanges; and not restricting the minor children to visiting only Hague Convention countries, where their mother is from a non-Hague Convention country. We further conclude the trial court properly found its Permanent Order to be in the best interests of the minor children.

AFFIRMED.

Judge WOOD concurs.

Judge ARROWOOD concurs in part and dissents in part by separate opinion.

ARROWOOD, Judge, concurring in part and dissenting in part.

I concur in the analysis with respect to international travel. However, I respectfully dissent from the decision to uphold the trial court's custody order. In my view, the trial court deprived plaintiff of a true 50/50 split in custody in failing to treat Father's Day and Mother's Day equally for custodial purposes, and the failure to affect a 50/50 split, in addition to the disregard for the parties' testimony that they wanted to share the holidays, amounts to an abuse of discretion. Further, although I express no view on whether plaintiff had a legal right to record custodial exchanges, I disagree with the analysis that the Federal Wiretap Act or the Electronic Surveillance Act control and authorize the trial court to make such a decree.

At the hearing, the trial court acknowledged that the parties had stipulated that it was in the children's best interest for both plaintiff and defendant to have joint legal custody of the children, "and the only issue for the Court to determine was the parameters involving any tie-breaking issues[,]" including holidays and summers. Plaintiff testified his opinion that Father's Day and Mother's Day should not "be completely balanced split holiday because it's significant to the mother more than the father and vice versa. So I would think the large part of the day should be with the mother on Mother's Day and with the Father on Father's Day." Defendant agreed in her testimony, stating that she would prefer custody for the entire Mother's Day

weekend, and "[s]ame on the other side" for Father's Day weekend. However, while the trial court ordered custody for defendant for the entire Mother's Day weekend, the trial court ordered no additional carve out for Father's Day, effectively treating it as part of the regular Summer Break schedule.

Although I do not fully agree with the plaintiff's argument that this imposes a quasi-tender years presumption, I do believe that the unequal division of custody between these holidays, with zero regard for the parties' testimony and stipulations, was error and prejudiced plaintiff, depriving him of the agreed-to 50/50 split and depriving him of an additional vacation weekend if he were compelled to use his additional vacation to celebrate Father's Day with his children, a decision that defendant would not have to make under this custody schedule. Further, although I recognize that the trial court has discretion over child custody cases, I believe the decision to allow the timing of the Summer schedule to override a carve out to maintain equality and a 50/50 split for custody including holidays, amounts to an abuse of discretion.

Regarding the recording during custodial exchanges, I do not believe the Federal Wiretap Act or the Electronic Surveillance Act are appropriate authorities to affirm the trial court's decree. However, as I believe the order should be vacated on other grounds, I do not express an opinion on what authority the trial court may have decreed under, nor whether that decree was lawful or unlawful.

Accordingly, I would vacate the order and remand for entry of a custody

schedule with equal custody for Father's Day and Mother's Day that accurately reflects the stipulations and testimony of the parties.