IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-647

Filed 18 March 2026

Gates County, No. 24CV001137-360

CLYTIA RIDDICK, Plaintiff,

v.

WARREN PERRY, in his individual capacity; SCOTT SAUER, in his individual capacity; GATES COUNTY, a governmental entity, Defendants.

Appeal by Plaintiff from Order entered 31 March 2025 by Judge Cindy King Sturges in Currituck County Civil Superior Court. Heard in the Court of Appeals 25 February 2026.

*Ralph Bryant Law Firm, by Ralph T. Bryant, Jr., for Plaintiff.*

*Womble Bond Dickinson (US) LLP, by Mary Craven Adams, for Defendants.*

ARROWOOD, Judge.

Clytia Riddick ("Plaintiff") appeals from order filed 31 March 2025 after Defendants Warren Perry ("Mr. Perry") and Scott Sauer ("Mr. Sauer"), in their individual capacities, successfully moved to dismiss her complaint pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted. For the following reasons, we affirm the trial court's order.

## I.     Background

Plaintiff has served as Director of the Gates County Board of Elections since

2010, when she was appointed by the Executive Director of the North Carolina Board of Elections. The Gates County Board of Elections is an independent board governed by the State Board of Elections. The Board of County Commissioners in each county compensates its county's Director of Elections. N.C.G.S. § 163-35(c). Mr. Perry is the human resources director for Gates County, and Mr. Sauer is County Manager.

In her complaint, filed 19 August 2024, Plaintiff sued Mr. Perry and Mr. Sauer in their individual capacities, making claims of tortious interference with a contract, illegal surveillance, and interference with her civil rights, and sued Gates County for conversion, seeking injunctive relief, compensatory and punitive damages, recovery of wrongly converted funds, costs, fees, and other damages. Defendants moved to dismiss on 25 October 2024 and filed an amended motion 26 November 2024, pursuant to Rules 12(b)(3) and 12(b)(6). Plaintiff voluntarily moved to dismiss without prejudice her claims against Gates County. The matter came before the Honorable Cindy King Sturges during the Civil Session of Currituck Civil County Court on 24 February 2025. The court granted Defendants' motion to dismiss and dismissed all of Plaintiff's claims with prejudice in an Order filed 31 March 2025. Plaintiff filed notice of appeal 17 April 2025.

This controversy arose out of a pay dispute beginning December 2023. Until this time, Plaintiff regularly submitted signed time sheets to the Chairman of the County Board of Elections, who signed and forwarded them to Gates County's payroll. Plaintiff alleges that Mr. Sauer and Mr. Perry began "accusing [her] of not working

the hours that she had submitted on her timesheet." She specifically claims that Mr. Perry "stated that he reviewed security camera footage and made a determination as to when the plaintiff's car was or was not in the Board of Elections parking lot, and that he deducted the hours from plaintiff's paycheck based upon his arbitrary assumption." She alleges that Defendants "conducted illegal surveillance" and "caused the Gates County Board of Commissioners to violate their statutory duty to compensate" her, and that they were "acting out of malice and personal ill will" and "outside of their scope and duties" with "constant, repetitious, and malicious intimidation and harassment."

Plaintiff contends that the Board of Commissioners have a statutory and contractual duty to pay her an annual predetermined salary which "cannot be reduced because of variations in the quality or quantity of the employee's work." Plaintiff also argues that Defendants were "motivated by the race of the plaintiff" and "conspired to interfere with" her "right to earn a livelihood in the vocation of her choice" because they "personally hate the fact that a Black female is the Director of Elections for Gates County." Plaintiff's complaint does not record the amount that she alleges her compensation was reduced or the precise dates for which Defendants allegedly conspired to reduce her pay. Plaintiff's annual compensation was set at $43,610.00 in July 2023, and she remains in her role as Gates County Director of Elections.

## II.    Discussion

- 3 -

Plaintiff argues that the trial court erred in dismissing her complaint, claiming that her complaint was sufficient to plead her claims of tortious interference with a contract, illegal surveillance, and civil rights violation. We discuss each claim in turn.

### A. Standard of Review

We review *de novo* the trial court's decision to grant Defendants' Motion to Dismiss. *Taylor v. Bank of America, N.A.*, 382 N.C. 677, 679 (2022) (citing *Bridges v. Parrish*, 366 N.C. 539, 541 (2013)). We consider the matter anew and freely substitute our judgment for the lower tribunal's. *State v. Williams*, 362 N.C. 628, 632–33 (2018). When reviewing the trial court's grant of a motion to dismiss, we consider "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Bridges*, 366 N.C. at 541. Accordingly, "[a]lthough well-pleaded factual allegations of the complaint are treated as true for purposes of a 12(b)(6) motion, conclusions of law or unwarranted deductions of facts are not admitted." *Dalenko v. Wake Cnty. Dep't of Hum. Servs.*, 157 N.C. App. 49, 56 (2003) (internal quotation marks and citation omitted).

It is proper for the trial court to dismiss a claim if one of the following is true: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 784 (2005) (quotation

marks and citation omitted).  A complaint is insufficient to survive a Motion to Dismiss where any such "insurmountable bar to recovery appears on the face of the complaint." *Al-Hourani v. Ashley*, 126 N.C. App. 519, 521 (1997) (internal citations omitted).

B.  The Trial Court Properly Dismissed Plaintiff's Tortious Interference Claim

To state a claim for tortious interference with contract, plaintiff must allege: (1) a valid contract between plaintiff and a third party which confers upon plaintiff a contractual right against the third party; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third party not to perform the contract; (4) and in doing so he acts without justification; (5) resulting in actual damage to Plaintiff.  *Beck v. City of Durham*, 154 N.C. App. 221, 232 (2002) (citing *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988)).

Plaintiff's complaint alleges the following facts: that Mr. Perry and Mr. Sauer used video security cameras and "hired their own additional Information Technology staff person to specifically service the voting equipment and the security camera system used . . . in the Board of Elections office" to "surreptitiously watch plaintiff and listen to [her] oral conversations."  She alleges that Defendants "called for closed sessions meetings with the board of elections and in these meetings have made false and slanderous allegations" against her and caused the Board of Commissioners "to violate their statutory duty to" pay her full salary.  She alleges that Mr. Perry told her that he determined which hours she was working based on security camera

footage of the parking lot. She claims that Mr. Perry "arbitrarily created" the amount she was paid. She claims she told Mr. Perry that she was paid a salary and that "it was inappropriate to deduct hours from her timesheet."

Plaintiff has not alleged facts sufficient to show the existence of a valid contract which imposes no obligations upon her while requiring the Board of Commissioners to compensate her with a full annual salary irrespective of the "quality or quantity" of her work. Plaintiff says the alleged contract is statutory, imposing its duty pursuant to N.C.G.S. § 163-35(c). Indeed, the laws and regulations concerning State employees become part of the State employees' employment contracts. *Sanders v. State Pers. Comm'n*, 197 N.C. App. 314, 320–21 (2009).

But this statute does not impose the duty Plaintiff describes. It requires that, "in all counties maintaining full-time registration (five days per week)," compensation for the Director of Elections "shall be in the form of a salary in an amount recommended by the county Board of Elections and approved by the Board of County Commissioners" and "commensurate with remuneration for Directors in similarly situated counties." N.C.G.S. § 163-35(c). In all counties, the Board "shall compensate the director of elections at a minimum rate of twelve dollars ($12.00) *per hour for hours worked in attendance to his or her duties as prescribed by law*, including rules and regulations adopted by the State Board of Elections." *Id.* (emphasis added). The statute also requires the Board grant the same leave received by other county employees. *Id.*

We previously analyzed this statute to determine whether counties have discretion to set compensation and held that "a county is afforded some measure of discretion in that the statute does not provide the specific salary or a definitive formula for fixing the salary." *Gilbert v. Guilford Cnty.*, 238 N.C. App. 54, 60 (2014). These statutes set the minimum parameters for Plaintiff's payment, but they do not require the Board of County Commissioners to set her pay for the year and then compensate her, whether the "quality or quantity" of her work is 100% or nil. The statute only requires the Board of County Commissioners to compensate her "for hours worked in attendance to his or her duties," at a minimum hourly rate of $12.00. N.C.G.S. § 163-35(c).

Plaintiff says she regularly submitted a time sheet recording her work hours. Reading her pled facts as true, the "straight forward" payment process shows that her compensation was always based upon the hours she worked, or claimed to work, and the Board was tracking and approving the hours she claimed she worked all along. This plainly undermines her contention as to the Board's alleged contract obligations. Accordingly, Plaintiff's complaint is insufficient to plead either this alleged contract's existence or Defendants' knowledge of such a contract.

Furthermore, to demonstrate the element of acting without justification, the complaint must indicate that Defendants had "no motive for interference other than malice." *Filmar Racing, Inc. v. Stewart,* 141 N.C. App. 668, 674 (2001) (citations omitted). Plaintiff alleges repeatedly that Defendants had no justification and acted

only out of malice. But this is a legal conclusion, and Plaintiff's repeated use of the word "malice" is no substitute for facts to support it. The facts that Plaintiff does include, taken as true, are insufficient to indicate that Defendants' alleged activity was unjustified, because interference with a contract is justified if motivated by a legitimate business purpose. *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 492 (1992).

The complaint alleges that the County's human resources director, Mr. Perry, told Plaintiff that he watched the parking lot security footage and had reason to believe her time sheet was inaccurate, and that Plaintiff "advised" Mr. Perry that she sometimes performed duties away from the office and that that the location of her car "did not mean that [she] was not working in her capacity." However, she also alleges that Mr. Perry knew her payment "cannot be reduced because of variations in the quality or quantity of the employees' work." Furthermore, Plaintiff never states that the hours on her time sheet actually reflected the hours she worked.

Taking all these allegations together, the complaint lacks facts sufficient to show that Defendants' only justification was malice. If Mr. Perry knew of a contract obliging the Board to pay Plaintiff whether she worked or not, he would have been unjustified in either monitoring her to ensure her hours were accurate or communicating any inaccuracy to the Board. As set forth above, that is not a correct statement of the law related to the payment for supervisors of elections, and Plaintiff has failed to plead that such an arrangement existed.

This leaves us with only facts that show an administrator balancing the books. Therefore, Plaintiff's legal conclusion that malice alone motivated Defendants' alleged conduct is undermined by her own description of the events. Accordingly, this complaint contains numerous grounds that required this claim's dismissal.

C.     The Trial Court Properly Dismissed Plaintiff's Illegal Surveillance Claim

Plaintiff's complaint alleges that Defendants illegally surveilled her by "secretly listening to and/or recording [her] conversations on a daily basis . . . surreptitiously through video cameras that the defendant[s] had installed in the Board of Elections." Plaintiff sues pursuant to N.C.G.S. § 15A-296, which creates a civil cause of action for individuals whose wire, oral, or electronic communications are unlawfully intercepted, disclosed, or used in violation of the Electronic Surveillance Act. N.C.G.S. § 15A-296. In pertinent part, the Act imposes criminal liability if, "without the consent of at least one party to the communication," a person "[w]illfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." N.C.G.S. § 15A–287(a)(1).

G.S. § 15A-296, "by its plain language, requires the *actual* interception, disclosure, or use of a communication as a prerequisite to maintaining a civil action and obtaining civil damages, in contrast to G.S. § 15A–286, which criminalizes a mere *endeavor* to intercept such a communication." *Kroh v. Kroh*, 152 N.C. App. 347, 351 (2002). "Intercept" means "the aural or other acquisition of the contents of any wire,

oral, or electronic communication through the use of any electronic, mechanical, or other device." N.C.G.S. § 15A–286(13). An "oral communication" is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. . . ." N.C.G.S. § 15A–286(17).

Furthermore, under § 15A-287 claims, the plaintiff must allege willful conduct without consent. *Wright v. Town of Zebulon*, 202 N.C. App. 540, 544–45 (2010). Because "willful" is not defined in the Act, this Court has approved federal courts' constructions of its use in the Federal Wiretapping Act, which our statute is "modeled after." *State v. McGriff*, 151 N.C. App. 631, 638 (2022); *see also State v. Price*, 170 N.C. App. 57, 65 (2005). Accordingly, this Court has previously construed the Act's use of "willfully" to mean " 'done with a bad purpose,' 'without justifiable excuse,' or 'stubbornly, obstinately, or perversely.' " *Wright*, 202 N.C. App. at 545; *see also McGriff,* 151 N.C. App at 638 (quoting *Adams v. Sumner*, 39 F.3d 933, 936 (9th Cir. 1994)).

Lastly, the statutes provide for an exception, where "an officer, employee, or agent of a provider of electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of employment while engaged in any activity that is a necessary incident to the rendition of his or her service or to the protection of the rights or property of the provider of that service . . . ." N.C.G.S. §

15A-287. In *Kinesis Advert., Inc. v. Hill*, 187 N.C. App. 1 (2007), plaintiffs sued their former employer, an advertising firm, alleging that its employees had accessed their official voicemail and e-mail accounts. This Court found no violation of the Act because Kinesis provided both communication services to its employees, and it had the right to access these services' facilities, for business-related reasons and to protect their rights and property. *Kinesis*, 187 N.C. App. at 17–18.

In the instant complaint, the facts alleging violation of the Act amount to using the office security camera system to "conduct surveillance of the plaintiff," "illegally listen[ ] to [her] phone calls [and] private conversations to harm the plaintiff in their effort to cause plaintiff's removal from her position." The only more particularized facts about Defendants' use of security cameras are, first, Mr. Perry's alleged statement that he reviewed parking lot footage to see whether Plaintiff's car was present for the hours on her time sheet, and second, that Defendants hired an IT worker to service the camera system. The first is unhelpful, because parking (or not parking) one's car is not communication for the purposes of the Act. And the second provides no support whatsoever for Plaintiff's deduction that Defendants used the service technician's work to illegally surveil her.

In fact, as to illegal surveillance, the complaint before us contains nothing more than legal conclusions and unwarranted deductions of fact. We are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health &*

*Hum. Servs.*, 174 N.C. App. 266, 274 (2005). To survive Defendants' Motion to Dismiss on this claim, the face of Plaintiff's complaint was required to contain facts setting out that the Defendants willfully intercepted her oral communications, and that she would have been justified in expecting that nothing she uttered at work was susceptible to interception. Setting aside her legal conclusions and her unreasonable and unwarranted inferences, what remains only repeats the minimal statutory elements of a violation. We take as true her claims that Defendants listened to her office conversations and phone calls through the security camera system and accept the implication that the system is equipped to capture audio, but this remains insufficient.

The complaint's other facts and omissions further degrade the claim's viability. If the security system captures audio, Plaintiff cannot justify a belief that nothing she said in the office would ever be heard by the County and its employees. Moreover, Plaintiff's complaint offers no facts about the oral communications allegedly intercepted and no facts showing that interception was to further a "bad purpose" or "without justifiable excuse." In fact, Plaintiff pleads no facts supporting her contentions that Defendants had any motivation whatsoever to listen to her office chatter, let alone to use the intercepted office chatter for any nefarious purpose. Ultimately, this claim is a repetitive pastiche of paranoia and irrational conjecture.

Lastly, the complaint offers no well-pled facts to displace Defendants from the statutory exception. Taking as true the claim that Defendants surveil Plaintiff's

activities on the security system, her complaint nevertheless compels the conclusion that Defendants did so "in the normal course of employment while engaged in [an] activity that is a necessary incident to the rendition of his or her service." Defendants are employees of the county, which provides, maintains, and operates the security system. Plaintiff explicitly claims that Mr. Perry said he monitored her to ensure that her recorded hours matched her actual attendance. Because she pled no facts sufficient to support her legal conclusions as to Defendants' willfulness or malicious intent, her facts support only one reasonable deduction: that Mr. Perry looked at security footage incident to the protection of County funds from waste by County employees.

Accordingly, this complaint is insufficient to state the claim that any of Defendants' alleged activity gives rise to civil damages under the Electronic Surveillance Act. Therefore, the trial court was amply justified in dismissing it.

D.  The Trial Court Properly Dismissed Plaintiff's Civil Rights Claim

Plaintiff asserts a claim under N.C.G.S. § 99D-1 alleging that her race motivated Defendants to interfere with her civil rights. N.C.G.S. § 99D-1 provides a civil cause of action for claims meeting these three elements:

> 1. Conspiracy Motivated by Protected Characteristics: Two or more persons must conspire to interfere with the exercise or enjoyment of a right secured by the Constitutions of the United States or North Carolina, or by a law of the United States or North Carolina that enforces, interprets, or impacts a constitutional right. The conspiracy must be motivated by race, religion, ethnicity,

or gender, regardless of whether the conspirators acted under color of law.

2. Unlawful Acts in Furtherance of the Conspiracy: At least one person involved in the conspiracy must use force, repeated harassment, violence, physical harm to persons or property, or direct or indirect threats of physical harm to persons or property to commit an act in furtherance of the conspiracy's objective.

3. Interference with Rights: The act committed in furtherance of the conspiracy must interfere with or attempt to interfere with the exercise or enjoyment of the right described in the first element.

N.C.G.S. § 99D-1(a). In sum, Plaintiff's complaint must plead a minimum of facts sufficient to state a claim for relief because, motivated by her race, Defendants conspired to interfere with one of her constitutional rights and acted unlawfully to further this conspiracy.

Again, Plaintiff's complaint is replete with unwarranted deductions and unsupported legal conclusions, but light on facts. It asserts a civil rights claim without making even one connection between Plaintiff's facts and her claim that racial hatred motivated Defendants, other than the circular and conclusory claim that they "personally hate the fact that a Black female is the Director of Elections." At this stage, the pleading standard is not onerous, but valid complaints of this kind must contain, at a bare minimum, some scintilla of factual allegation lending credence to a theory of racially motivated conspiracy. We discern no such scintilla.

The factual paucity of Plaintiff's claim does not end with the allegedly racial motivation. First, "[t]he claim suggests that Defendants conspired but fails to allege how this conspiracy came to be, or when, or where, or why." *Vivam v. Bailey*, 238 N.C. App. 202, 213 (2014) (cleaned up). The same goes for Plaintiff's allegations of harassment; for her theory to prevail, at least one of the Defendants must have engaged in "repeated harassment," but she describes only one interaction with Mr. Perry and no interactions at all with Mr. Sauer.

Lastly, the constitutional right to which Plaintiff refers is the foundational inalienable right to enjoy the fruits of one's own labor. *See* N.C. Const. art. I, § 1.

> [T]o state a direct constitutional claim grounded in this unique right under the North Carolina Constitution, a public employee must show that no other state law remedy is available and plead facts establishing three elements: (1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation.

*Tully v. City of Wilmington*, 370 N.C. 527, 536–37 (2018). First, alternate adequate remedies were available to Plaintiff under state law if she wished to file a civil complaint to recover unpaid wages. *See* N.C.G.S. § 95-25.22. Second, Plaintiff's complaint notably omits any suggestion that Defendants sought to remove Plaintiff from her role as Director, temporarily or permanently. She remains in the position. Therefore, because Plaintiff's complaint is insufficient to state any claim for relief, the trial court properly dismissed this claim.

III.    <u>Conclusion</u>

For the above reasons, we find no error and affirm the trial court's order.

AFFIRMED.

Chief Judge DILLON and Judge STADING concur.